ALDRIDGE AND HIGDON *vs.* WEEMS AND HALL.—*December,* 1829.

T, who was indebted to A and H, held a mortgage from W, upon which he made the following assignment, under his hand and seal.   " For value received, I hereby transfer, assign and make over to Messrs. A and H, this mortgage and the debt so intended to be secured thereby, witness my hand and seal, this, &c." About twelve months after, T died.   The mortgage and assignment were found uncancelled among his papers.   To a bill filed by A and H, against the mortgagor and T's administrator, to enforce the assignment for the payment of their debt, which alleged, that T had promised to secure their debt by making the assignment in question, the answer of the administrator stated, " that T might have promised to secure the debt, and that the endorsement may have been written on the mortgage with a view to comply with such promise, but denied that there was a delivery of it in fact by T, or an acceptance thereof by the complainants."   Upon appeal, it was HELD, that an assignment of T's interest in the mortgage, might be good and operative, without actual delivery, if

connected with evidence to show he intended it to transfer his interest, in the thing assigned. That this assignment had all the forms and solemnities necessary to constitute a good contract, was in his hand-writing, signed by him, and contained a full expression of his intention to transfer his interest in the mortgage.

A Court of Equity has the power, and will make every possible effort, within the range allowed by the statute of frauds, to heal the infirmities of defective contracts of every description that can be sanctioned by the law.

APPEAL from a decree of the Court of Chancery, dismissing the bill of the complainants, (now appellants.) The bill filed on the 5th of September, 1826, stated, that the complainants for a number of years were engaged as copartners in trade, in the City of *Baltimore;* that while so engaged in business, *Thomas Tongue* and *Thomas T. McPherson,* of *Anne Arundel* County, also engaged in trade under the firm of *Tongue* and *McPherson,* became indebted to them in the sum of $5009 95, with interest; that much of this claim had existed for several years, and *Tongue,* who in the dealings between the two firms, was principally known and relied on by the complainants, had repeatedly promised to secure the payment of the said claim with interest. That *William Weems,* (one of the defendants and appellees) being indebted to *Tongue,* in the sum of $2900, in order to secure the payment thereof, did, on the 14th of December, 1821, execute to the said *Tongue* a deed of mortgage, thereby conveying to him and his heirs, a tract or parcel of land called *Portland Manor,* lying in *Anne Arundel* county, and containing 300 acres, with a proviso, that if *Weems,* his heirs, &c. should pay to *Tongue,* his executors, &c. the said sum of $2900, with interest thereon, in four years from the date thereof, then the said deed to be void. That the said deed was in due form of law acknowledged and recorded; that the said debt remains due, and the time limited for payment thereof expired in the month of December, 1825; and the debt intended to be secured by the said deed, being unsatisfied, a decree for the sale of the premises may now be asked. That after the execution of the said deed, and before the

expiration of the time allowed to *Weems* for the payment of the said debt, *Tongue* proposed to the complainants to take, and they at his request agreed to take an assignment of the said mortgage, as a security to them, for the payment of so much of the debt due from *Tongue* and *McPherson* to the complainants, as by the said deed, *Weems* acknowledged that he owed to *Tongue*. The proposition of *Tongue* being acceded to by the complainants, and the form of the assignment which they were willing to take, being furnished to *Tongue* by the complainants, *Tongue*, in pursuance of the agreement aforesaid, on the back of the said deed of mortgage, wrote the following assignment: "For value received, I hereby transfer, assign and make over to Messrs. *Aldridge* and *Higdon* of *Baltimore*, this mortgage, and the debt so intended to be secured thereby. Witness my hand and seal, this 11th day of January, 1825." And the said assignment, in the hand-writing of *Tongue*, was by him, on the day expressed therein, signed, sealed and delivered to the complainants. The same however was an insufficient security for the debt of the complainants, and the time allowed in the deed to *Weems* to pay his debt, not having expired, the complainants, at the request of *Tongue*, agreed to leave the same in his possession, and the same was kept by him, the complainants having no occasion for it, until the death of *Tongue*, which happened a very short time afterwards. That the assignment was intended to operate, not as an absolute transfer to the complainants of the debt due from *Weems* to *Tongue*, but only as a security in part for the payment of a larger debt, due to them from *Tongue*, though they are willing to accept of the same, when the precise sum due on the mortgage is ascertained, as a transfer of the debt, and a payment of so much of their claim. But the complainants are advised and expressly charge, that the effect of such assignment is, to give to them a right to demand the said debt of *Weems*, to take legal steps for the recovery of it, and in a Court of Equity, they are the persons to ask, that in default of payment, a decree be

passed for a sale of the mortgaged premises. They also charge, that the debt due to them from *Tongue* and *McPherson* is unpaid, and they have received no other security for the payment of it. That *Weems* has had notice of the said assignment; and although repeatedly requested, has refused to pay the debt due from him as aforesaid, or any part, but the same is still due. They further charge, that shortly after the execution of the assignment, *Tongue* died intestate ; that letters of administration upon his estate have been granted to *Thomas J. Hall,* (the other defendant and appellee,) who having possessed himself of the effects and papers of his intestate, now holds the said mortgage and assignment; and the complainants pray, that he may be compelled to bring the same into court, in order that the right of the complainants thereto, may be shown, and a decree for the sale of the premises may be had. *Prayer,* that a decree may be had for the sale of the mortgaged premises for the benefit of the complainants, unless *Weems* shall, within a time thereinto be limited, pay to them the debt due by him ; and also for general relief.

The answer of *Hall,* admitted the partnership of the complainants, and that of *Tongue* and *McPherson;* also, that *Weems* was indebted to *Tongue,* and executed the mortgage mentioned, which he exhibited; also, that the endorsement on the mortgage, was in the hand-writing of *Tongue ;* but he denied that the mortgage was ever delivered, either actually or virtually to the complainants by *Tongue;* and he stated, that the mortgage was found among *Tongue's* papers, after his death, not connected with any other paper or memorandum, to show that it had been left with him by the complainants. He admitted that *Tongue* might have promised to secure the debt due by *Tongue* and *McPherson* to the complainants, and that the endorsement may have been written on the mortgage by *Tongue,* with a view of complying with such promise; but he denied that there ever was a delivery in fact of the mortgage, by *Tongue,* or an acceptance thereof by the complainants. That *Tongue*

.died in January, 1826, nearly a year after the date of the endorsement on the mortgage. That soon after the death of *Tongue*, and granting letters of administration to this defendant, he addressed a letter to the complainants, upon the subject of *Tongue's* affairs, in the expectation of receiving some important information from them. In their answer, there was no allusion to the assignment of the mortgage, and no claim or pretence set up to any part of *Tongue's* property, or to any of his securities, as having been appropriated to the benefit of, or assigned to the complainants. They did not then pretend to claim the mortgage upon *Weems*, as having been assigned to them. He believed, that the first information which they received of the endorsement on the mortgage, was communicated by him, no demand having been made by them for the surrender or delivery thereof, until after they had been informed by this defendant, of the existence of such endorsement. He knows nothing of, and therefore does not admit the statement in the bill of the form of an assignment, having been furnished by the complainants to *Tongue*. That the personal estate of *Tongue*, will not be sufficient to discharge his debts, and that he is advised not to surrender the said mortgage, unless he is compelled by law so to do, &c.

The answer of *Weems* admitted the execution of the mortgage, and the justice of the claim for which it was given. He knew nothing of the other facts stated in the bill. He claimed to be credited with the sum of $439 26, being for tobacco delivered to *Tongue*, in part payment of the mortgage.

*Admissions.* It was admitted by the parties, that the letter from the defendant *Hall* to the complainants, and that from the complainants to *Hall*, marked exhibits A and B, were written by the parties signing them, and are the letters spoken of in the answer of *Hall*. Also, at the time of *Tongue's* death, and at the date of the endorsement on the mortgage, the partnership of *Tongue* and *McPherson*

were largely indebted to the complainants, and that *Tongue*, the mortgagee, was one of that firm. Also, that the endorsement on the said mortgage, and the signature thereto, are in the hand-writing of *Tongue*.

*Exhibit A.* Letter from *Hall* to the complainants, dated *T. Landing*, the 10th of February, 1826. " Knowing the intimacy which existed between the late *Thomas Tongue* and yourselves, and the mutual friendship between you, I have taken the liberty of calling on you, for any information you may be in possession of, relative to his business with the Messrs. *Mullikins;* also any information you possess, relative to the amount of debts due from him individually in *Baltimore*. There are rumors here, that are really alarming to those interested in his estate, respecting money due in *Baltimore*. Be good enough to give me your ideas generally, as regards the *Mullikins*, and what would be the most judicious course to pursue in recovering the money, also the amount they owe him, for it is impossible to ascertain it from his papers. This is a confidential communication, and your reply shall be so considered."

*Exhibit B.* Letter from the complainants to *Hall*, dated *Baltimore*, the 11th of February, 1826. " In reply to your letter of the 10th inst. we would merely remark, that we are confident that the claims in this place against *T. Tongue*, individually, cannot be large; but as we are not at present enabled to state, with any degree of certainty, the amount due by him, we would recommend your taking a trip to this place, when you can, on the spot, get more satisfactory information. We think it also necessary, that you should see Mr. *R. Mullikin*, he resides here, relative to the claim against *B. D.* and *R. Mullikin ;* and we shall take great pleasure in giving you all the information, as well as advice, relative thereto. We can now say, that we saw notes in possession of Mr. *Tongue*, for $3500, each drawn by *B. D.* and *R. Mullikin ;* but which Mr. *T.* said was about $3000 short of what they owed him. You must come up."

BLAND, Chancellor, (December Term, 1826.)

The only question in this case is, whether the writing of the 11th of January, 1825, endorsed on the mortgage, is available to the plaintiffs or not? There can be no doubt, that delivery is essential to the validity of a deed; nor can it be doubted, that this court has the power, and will make every possible effort, within the range allowed by the statute of frauds, to heal the infirmities of *defective* contracts of every description, that can be sanctioned by the law. But the objection to the plaintiffs taking any thing by this writing is, not that it wants any of the forms and solemnities peculiar to any class of contracts, or that it is an imperfect expression of the will and agreement of the party. It is, that it has not, nor never had, as a contract, that which is of the vital essence of all obligations, the *free and final assent* of the party; and, consequently, that it is not a contract at all, or in any sense.

The *assent* of the parties is indispensably necessary to the formation of all contracts. The various forms and ceremonies prescribed, or required by the law, are the solemn precautions, the evidences, by which the free and deliberate *assent* of the mind of the person contracting, are required to be externally manifested; and, when the *consent* of the party is clearly established, equity will go far in supplying the want of them.

The doctrine, in relation to equitable mortgages, has no direct bearing upon this question. But, most of the cases that have been referred to in the argument, are those which involve the question of an equitable mortgage or not; and, indeed all others, which arise out of informal, defective, mistaken, or part executed contracts, turn upon the establishment of this preliminary point, the *final and deliberate assent* of the party, who is alleged to have contracted. For, a complainant cannot ask a remedy for any omitted form or solemnity; nor can the court be called on to supply a defective expression of will; to correct an error; or to complete the execution of an unfinished intention, where there is no

satisfactory proof of any deliberate and final *intention* to contract, ever having existed.

That the late *Thomas Tongue* contemplated an assignment of the mortgage; that he meditated upon it; and that he expressed his thoughts upon the subject in writing, there can be no doubt. But, there is not the least evidence, that he had ever, at any time during his life, given his *final consent* to such a contract as that, upon which it appears, he had seriously reflected, and thus expressed his thoughts. He contemplated making an acknowledgment, that he had received value for the mortgage; and, he expressed the result of his meditation upon the subject of making an assignment of it, to the plaintiffs, in consideration thereof; but there is no proof that he ever did so, in fact. He never informed the plaintiffs, or any one else, that he had done so; nor were they ever in any way apprised, that he had made and *assented* to a *contract*, by which he assigned the mortgage to them. This writing remained in *Tongue's* own possession, under his own entire and absolute control, until his death; and, being so left, without that *assent*, essentially necessary to the creation of an obligation, it cannot now be considered as a contract or agreement, of any description whatever. Nor, can it be allowed to take effect, in any way, as a testamentary writing; because there is nothing upon the face of it; nor any act, or evidence in relation to it, which shows, that it was made in contemplation of the death of the writer; or, was ever intended by him, to take effect after his decease. This writing is, therefore, in every point of view, a mere nullity. DECREED, that the bill of complaint of the complainants, be dismissed with costs.

From which decree the complainants appealed to this court.

The cause was argued before EARLE, MARTIN, and DORSEY, J.

*Magruder*, for the appellants, contended,

1. That they were entitled to the same relief against *Hall*, the administrator of *Tongue*, that they could have had against *Tongue*, had he been alive. *Dorsey vs. Smithson*, 6 *Harr. and Johns.* 61.

2. That the assignment of the mortage being proved to be in the hand-writing of the mortgagee, entitled the appellants, as assignees, to the debt thereby secured, and to the security for the payment of it; of course the relief prayed ought to have been granted.

It was not necessary to prove an actual delivery of the assignment, if a delivery was necessary to such an assignment. The law does not authorise the assignment of a *chose in action*. Legal evidence of the fact of an agreement to assign, is sufficient, if in writing. Suppose *Tongue* had filed a bill to foreclose the mortgage, *Weems* could have objected that he was not the proper person to file the bill, having assigned away his interest. Suppose *Weems* had paid the mortgaged debt to the assignees, *Tongue* could not recover it. If a deed of bargain and sale is not recorded, yet it is evidence of a contract; and the deed is not void, because it was not recorded. Debts may be assigned by parol, upon valuable consideration. 2 *Com. Dig.* 373, cites 2 *Ch. Cas.* 7, 37. This is not an instrument within the statute of frauds; and could be the foundation for a suit in equity. *Clavering vs. Clavering*, 2 *Vern.* 473. *Boughton vs. Boughton*, 1 *Atk.* 625. *Johnson vs. Smith*, 1 *Ves.* 314. *Souverbye vs. Arden*, 1 *Johns. Ch. Rep.* 240, 256. 1 *Madd. Ch.* 299. *Pow. on Mort.* 460. *Ham. Dig.* 365, *pl.* 21. *Ex parte Bruce*, 1 *Rose*, 374. *Hankey vs. Vernon*, 2 *Cox's Ch. Rep.* 13. *Burn vs. Burn*, 3 *Ves.* 573, 582, 583. *Mestaer vs. Gillespie*, 11 *Ves.* 624. If it is not an assignment, it operates as a release of the mortgage, the debt being satisfied. Is it necessary to prove the delivery of a receipt, in order to make it effectual? *Saunderson vs. Jackson*, 2 *Bos. and Pull.* 239.

*S. Pinkney*, for the appellees. The delivery of an instrument of writing is essential. *Clarke vs. Ray*, 1 *Harr. and Johns.* 323. Delivery is necessary, because the party may retract, and so long as it remained undelivered, it was for his consideration. Suppose a promissory note was found in the possession of the drawer, would it not be considered as a satisfaction of the amount? The complainants do not appear to be the creditors of *Tongue*. Their claim was against *Tongue* and *McPherson*, and *McPherson* having survived *Tongue*, their remedy was against *McPherson*. *McCulloh vs. Dashiell*, 1 *Harr. and Gill*, 96. There are instances where evidence of presumption that there was a delivery, would be sufficient, if not rebutted. *Goodrich vs. Walker*, 1 *Johns. Cas.* 250. *Clavering vs. Clavering*, 2 *Vern.* 473. *Souverbye vs. Arden*, 1 *Johns. Ch. Rep.* 240.

*Shaw*, also for the appellees. 1. If *Tongue* had been a party, the case would be different; but it is the case of one creditor claiming to have a preference to the exclusion of all other creditors. There was no delivery of the assignment, either actual or constructive. 2 *Jacobs' L. D.* 223.

2. The circumstances connected with the assignment, show it was not considered to be effectual. It remained in the possession of *Tongue* a whole year, and there is no proof that he had apprized the complainants he had executed the assignment. If it is a valid assignment, it must be inferred that *Tongue* intended to secure his own individual debt, and not that of *Tongue* and *McPherson*.

3. It was not such a deposite of title papers, as to give the complainants an equitable lien. There could be no deposite, without a depositee; here there was none. *Mandeville vs. Welsh*, 5 *Wheat.* 284. *Ex parte Mountfort*, 14 *Ves.* 606. *Ex parte Coombe*, 17 *Ves.* 369. *Ex parte Bulteel*, 2 *Cox's Ch. Cas.* 247.

*Magruder*, in reply. This case is to be decided on under the agreement of admissions between the parties, with-

out resorting to the bill or answers as to the facts relative to the assignment.    There is no evidence in the record about creditors, or partnership creditors.    The creditors are not before the court.    The cases cited on the other side, were cases of bankruptcy, where the creditors were seeking to recover.    If there was a consideration given for the assignment, Chancery can enforce it.    *Black vs. Cord,* 2 *Harr. and Gill,* 100.    *Lord Carteret vs. Paschal,* 3 *P. Wms.* 199.    *Bunn vs. Winthop,* 1 *Johns. Ch. Rep.* 336. *Tongue* held the assignment in trust for the benefit of the complainants.    *Moses vs. Murgatroyd,* 1 *Johns. Ch. Rep.* 119.    *Cumberland vs. Codrington,* 3 *Johns. Ch. Rep.* 261.    *Shepherd vs. McEvers,* 4 *Johns. Ch. Rep.* 136.    A *chose in action* may be assigned, and a court of equity will protect the assignee.    The assignment need not be in writing; and if it is in writing it need not be under seal. If the assignor disputes it, then the assignee must prove a valuable consideration for it.

MARTIN, J. delivered the opinion of the court.

The bill charges that *Tongue* and *McPherson* were indebted to *Aldridge and Higdon,* in a large sum of money, and that *Tongue,* who was the active partner, had repeatedly promised to secure the payment of the same.    That *Weems* was indebted to *Tongue,* and gave him a deed of mortgage on the 14th day of December, 1821, to secure the payment of the debt in four years after the date of the mortgage.    That before the expiration of the time allowed *Weems* for payment, *Tongue* proposed, and the complainants agreed, to accept an assignment of this mortgage, as security to them in part payment of their debt, and accordingly the following assignment was made by *Tongue* on the mortgage:    " For value received, I hereby transfer, assign, and make over to Messrs. *Aldridge* and *Higdon,* of Baltimore, this mortgage, and the debt so intended to be secured thereby:  witness my hand and seal, this eleventh day of January, eighteen hundred and twenty-five."    That *Tongue,*

in a short time after this assignment, died intestate, and letters of administration were granted to *Hall*, &c. The answer of *Hall* admits the partnership of *Tongue* and *McPherson;* that the mortgage, as set out in the bill, was executed by *Weems*, and that the endorsement on the mortgage, purporting to be an assignment, *is in the hand-writing of Tongue.* That the mortgage was found among *Tongue's* papers at his death. He further admits that *Tongue might have promised to secure the debt due to the complainants, and that the endorsement may have been written on said mortgage, with a view of complying with such promise,* but he denies that there ever was a delivery in fact of the said *mortgage* by *Tongue*, or an acceptance thereof by the said complainants. It is also stated in the answer, that *Tongue* died in January, 1826. The only question put in issue by this bill and answer, is, whether it was necessary to give legal effect to this assignment, that there should be a delivery of the mortgage by *Tongue* to the complainants.

In examining this case, it is necessary to keep constantly in view, that this is not a mortgage or deed that requires delivery to give it legal effect, but an assignment of *Tongue's* interest in the mortgage, that may be good and operative without actual delivery, if there is evidence to shew the party intended it, to transfer his interest in the thing assigned. This doctrine is admitted by the Chancellor in his decree, and that a Court of Equity has the power, and will make *every possible effort,* within the range allowed by the *statute of frauds,* to heal the infirmities of defective contracts of every description, that can be sanctioned by the law. This assignment has all the forms and solemnities necessary to constitute a good contract. It is in the hand-writing of *Tongue*, and signed by him, and is a full expression of his intention to transfer his interest in the mortgage, to *Aldridge and Higdon.* This not only appears on the face of the assignment itself, but is admitted by the answer of *Hall*, the administrator of *Tongue.*

In his answer, responsive to the bill, he admits the assignment is in the hand-writing of *Tongue*, and was found among his papers at his death.   That the said *Tongue* might have promised to secure the debt due to *Aldridge and Higdon*, and that the endorsement may have been written on the said mortgage by the said *Tongue*, with a view of complying with such promise.

It was the moral duty of *Tongue* to secure the debt due to *Aldridge and Higdon*.   It was his express agreement to do so.   He has made a solemn instrument in his own hand-writing, and signed by him to produce that effect, and this instrument remains in his possession, *uncancelled*, until the day of his death; yet it is said you are to presume this was all idle and nugatory, and that too, in a Court of Equity, whose peculiar province and pleasure it is to heal defective contracts, and carry the intention of parties into effect. This doctrine would pervert the equitable powers of a Court of Chancery.

The object and intention of *Tongue*, when he made the assignment, is not only obvious from the writing itself, but is admitted by the administrator, and his permitting it to remain *uncancelled*, affords a strong presumption that the same intention continued to the day of his death.   This record presents no sufficient evidence to rebut that presumption.   We are therefore of opinion that the decree of the Chancellor is erroneous, and ought to be reversed.

                                                    **DECREE REVERSED.**