## JOHN S. BERRY *vs.* DANIEL J. FOLEY, TRUSTEE.

*Effect of Ratification by Court of Sale of Ground Rent by a Trustee—
Delay in Payment of Purchase-money—Right of Assignee of Purchaser to Demand Conveyance—Limitations and Laches.*

When a trustee reports a sale of property to a Court of equity which is finally ratified, the purchaser is thereby invested with the equitable ownership of the property and is entitled to a conveyance thereof upon payment of the purchase-money. Such a sale may be enforced against the purchaser by summary process of the Court.

A trustee under a will, with a power of sale, reported to the equity Court in 1875, that he had previously leased a lot of ground to one B. for ninety-nine years, reserving a certain annual rent, and had agreed that B. should have the privilege of buying out said rent within three years,

and that in pursuance of the agreement B. had agreed to buy the ground rent for the sum mentioned in the agreement. The Court thereupon passed an order *nisi* ratifying the sale and directing the execution of a deed to B. upon payment by him of the purchase-money. Before final ratification of this sale, B. sold the property to the petitioner in this case, agreeing that part of the price, being the amount required as aforesaid for the redemption of the ground rent, should not be payable until B. should deliver a good deed for the property in fee. The sale reported by the trustee was finally ratified, but the price of the rent was not paid to the trustee. B. conveyed the land to the petitioner by a deed stating that the latter had a right to buy out and extinguish the ground rent. The petitioner continued to pay the rent or interest on the purchase-money to the trustee for more than twenty years and then filed the petition in this case, alleging his right to be substituted as purchaser of the rent in the place of B., and that he was entitled upon payment of the purchase-money, with interest, to receive from the trustee a deed in fee of the property discharged from the ground rent. *Held*,

1st. That the order ratifying the sale to B. made the same binding both upon him and the trustee, vesting an equitable title to the property in B., and imposing on him the duty of paying the purchase-money with interest; the rights of the parties under the agreement to buy being thereby extinguished.

2nd. That the petitioner became substituted equitably to the rights of B. in the premises, and is entitled to demand a conveyance of the fee upon payment of the purchase-money.

3rd. That this right of the petitioner is not barred by limitations or laches since the trustee had never demanded payment of the purchase-money, and the petitioner had regularly paid the interest thereon.

Appeal from an order of the Circuit Court of Baltimore City (WICKES, J.), dismissing the petition of the appellant, filed to compel the appellee to convey to him the ground rent of $325.00 *per annum* upon his residence, No. 1500 Eutaw Place, in the city of Baltimore. The appellee, as trustee under the last will and testament of Emily McTavish, deceased, was seized in fee among other property, of a vacant lot of ground on Eutaw Place, in the city of Baltimore, which lot, by virtue of the power contained in the will of his testatrix, he leased to a certain Henry Blake, on the 11th day of June, 1874, for a term of ninety-nine years, renewable forever, reserving a rent of $325.00 *per annum*, payable half-yearly. The lease contained no redemption clause, but it appears that in the written memorandum or agreement to

lease, Blake, the lessee, had the privilege of buying out the said rent at any time within three years from the date thereof. Blake placed valuable improvements upon the property, and on or about the 19th of May, 1875, sold and agreed to convey the same in *fee-simple* to General Berry, the appellant, for the sum of $25,000, and entered into a bond of conveyance to that effect. By the bond, and endorsements thereon, it appears that over $19,000 of the purchase-money was paid in cash, and that the remainder, to wit, $5,416.67, which represented the ground rent of $325 *per annum*, capitalized at 6 per cent, was to be paid " on the 9th of June next (1875), or as soon thereafter as a good deed in fee for said property is made and delivered by said Blake to said Berry, clear of all encumbrances of every kind whatsoever." This bond of conveyance was duly recorded on the 22nd of June, 1875.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Frank Gosnell* (with whom was *John H. Morgan* on the brief), for the appellant:

There is no evidence in the record of any intention upon the part of Blake to abandon the purchase; on the contrary, the documentary evidence (see recitals in his bond of conveyance and deed to the appellee) show conclusively his intentions to have been just the reverse, and this brings us to the important question in the case, and that is, has the appellant, by the *mere lapse of time*, lost his right to acquire a fee-simple title to the property in question? Clearly not, for when the sale made by the appellee to Blake was finally ratified and confirmed by the equity Court, Blake and his assignees acquired, as purchasers, certain *rights* in the property which could not be disturbed or gotten rid of except in the manner pointed out by statute; that is, by process of attachment or other execution suited to the case, or upon resale of the property at the risk of the purchaser. *Code*, Art. 16, sec. 194; *Miller's Equity*, sec. 521; *Richardson* v. *Jones*, 3 G. & J. 186; *Boyle* v. *Schindel*, 52 Md. 7.

As no time was mentioned within which the purchase-money was to be paid, the prayer of appellee's petition merely being that the sale be confirmed according to the practice of the Court in the case of sales made by trustees of the Court—and that the Court should authorize and direct the execution and delivery by him, the appellee, of a *proper deed to said property to said Blake upon the receipt by him of the purchase-money*—and as no demand or even request was made by the trustee for the purchase-money, the trustee instead having accepted the ground rent, which was equivalent to six per cent upon the purchase-money, we fail to see that either Blake or the appellant has been in default. Suppose the day following the final ratification of the sale demand had been made by the appellee for the purchase-money, and suppose the purchaser had defaulted, the trustee's only remedy would have been a resale or proceedings by way of attachment or execution. *Mealey* v. *Page*, 41 Md. 183; *Sloan* v. *Safe Deposit and Trust Company*, 73 Md. 239, 241, 243, 246–7.

Blake's *rights* having been transferred and assigned to the appellant, he is entitled to be substituted as purchaser, and that is part of the relief prayed. *William's case*, 3 Bland. 198, 199, note at page 200 ; *Miller's Equity*, sec. 513; *Marburg* v. *Cole*, 49 Md. 402. 413; *Farmers' Bank* v. *Clark*, 28 Md. 145, 147, 148, 156. Apart from this the equities are all in favor of the appellant. The evidence in the case is uncontradicted that the appellant was informed, and always believed, that he could pay for this ground rent at any time he saw fit, and he never had any doubt upon the subject until shortly before he filed his petition on the 3rd of June, 1899. His testimony is that he purchased the property in fee-simple, and he would not have had anything to do with it had he for a moment supposed the ground rent was irredeemable. He was prepared at all times to pay for it, but as no demand was ever made upon him by the appellee for the purchase-money he simply remained inactive.

*Frederick C. Cook* and *Harry M. Benzinger* for the appellee :
Inasmuch as there is no reference in any of the proceedings

showing the agreement to lease gave the privilege or option of buying out the $325 rent to *Henry Blake and his assigns*, it must be considered as conferring this privilege only upon *Henry Blake personally*, and that it was, therefore, exclusively a personal privilege, and could be availed of by no one but Blake himself.

Both Berry and Blake knew when this purchase-money was payable to Foley, trustee, in the exercise of the privilege given to Blake, as their bond of conveyance shows, and accordingly, on September 23, 1875, when Berry paid the last instalment of the $10,583.33 to Blake, he received from Blake a deed of the leasehold interest in the property in question, subject to the annual rent of $325, in consideration of the sum of $19,583.33, and in fulfillment of a bond of conveyance, dated, etc., conveying the property by metes and bounds, and by reference identifying it as leased by Foley, trustee, to Henry Blake by deed of June 11, 1874, under a rent of $325 *per annum*, and which said ground rent said Blake has a right to buy out and extinguish and to obtain a deed in fee for said parcel of ground upon the payment of the sum of $5,416.67 and all arrears of rent as will appear from the proceedings in the Circuit Court of Baltimore City in the matter of the trust under the will of Mrs. Emily McTavish, docket No. 15 A, 1875, folio 59, recorded in chancery records of said Court in Liber J. R. B., No. 87, folio 350, etc.

By the appurtenances clause of this deed and without any words of assignment, this right of Blake is sought to be made appurtenant to the leasehold interest in the property transferred by this deed, for after mentioning in the usual way the appurtenances to the property is added "and all the right, title, interest, claim, demand and estate of said Blake at law or in equity into and out of the same, and especially the right to obtain a deed in fee of said property released from said ground rent upon paying to the party entitled to receive the same the said sum of five thousand and sixteen 67-100 dollars.

By carefully considering this deed, executed in fulfillment of the bond previously made for a conveyance in fee-simple by

Blake to him, we must be persuaded that General Berry re-linquished his claim to such a conveyance from Henry Blake, and did not desire then to be substituted as a purchaser, or else he would have had this done by an order of the Court passed at that time, if the Court had the right to do this under the circumstances of this case, or he would have insisted on Mr. Blake demanding his deed and paying for the property and conveying the same according to the terms of the bond. Without speculating upon the causes why this was not done, it is enough to know it was neither done nor attempted to be done until after a lapse of nearly twenty-four years, of which delay no explanation is made either in the petition or evidence.

This case shows no right on the part of General Berry to be substituted as purchaser instead of Henry Blake, in the absence of clear and positive evidence as to the terms of the contract giving Blake the privilege of buying out the rent at $325, by which his assignees could claim the same right, and that, if such right ever existed on behalf of the assignee, it should have been exercised by either Blake or his assignee within the time limited, and is at this late day entirely barred by *laches* and lapse of time.

Were Henry Blake now seeking to avail himself of the privilege or option of buying out this rent, by an independent bill, it would at once be manifest that this *unilateral* contract, giving him such option or right was binding only upon Foley, trustee, and not upon Blake, and thus being not mutual, it only bound the *trustee* during the stipulated time, and that after the time limited there was nothing to bind him to accept the price and convey the property; *Coleman* v. *Applegarth*, 68 Md. 27; and that a Court of equity would not therefore enforce such a contract after the expiration of the time fixed, which was of the essence of the contract. *Gilman* v. *Smith*, 71 Md. 171; *Kelsey* v. *Crowther*, 162 U. S. 408; *White & Tud. Ldg. Cases*, vol. II, pt. II, page 1129, &c., 4th Am. ed.

Another defense against any proceeding by indepedent bill by Henry Blake, should he now be suing to exercise his priv-ilege of extinguishing or buying out the rent in question,

would arise because of his laches.    The Statute of Limitation of this State provides that " no  *  *  * judgment  *  *  * except such as shall be taken for the use of the State shall be good and pleadable or admitted in evidence against any person in this State after  *  *  *  the debt or thing in action is above twelve years' standing," saving certain enumerated disabilities.    (Art. 57, sec. 3, Code, 1888.)    By analogy to the law, this rule is enforced in equity as applicable to decrees, and would preclude any reliance on the final order of ratification passed on June 9, 1875, as a decretal order.    Even statutes regulating the revivor of decrees do not " embrace the case of a decree become dormant by lapse of time, and where the law presumes from the delay that it is released or satisfied."    *Franklin* v. *Franklin*, 1 Md. Ch. 344.    It might be added to the above, *or where the law presumes the rights conferred by the decree have been abandoned,* for the trustee and others interested " might well have inferred from the laches of the purchaser, his subsequent absence from the State, and non-compliance with the terms, that the sale was abandoned," using the words of CHIEF JUSTICE BOWIE in *Billingslea* v. *Baldwin*, 23 Md. 105, speaking of a case where a purchaser after failing to comply for some time with the terms of a sale of reversion after a life-estate, the ratification of which was pending, sought, when the life-tenant had died, to avail himself of the purchase.    In this view JUDGE WIESEL concurred with the Chief Justice, saying that the proof showed that all the parties " were led to believe the sale was not to be perfected," (23 Md. 113), and the opinion of the Court, by BARTOL, J., says, " with reference to the order of the Circuit Court setting aside the sale made to the appellant, we concur in the opinion expressed by the Chief Justice."

The duty required of Blake was to consummate his purchase *by payment within three years,* so that the trustee, Foley, might reinvest the money in some safe investment at the then rates at which investments might be made, and not to wait until by the enhanced value of the rent of $325, by reason of the changed and improved condition of the neighborhood where

the property is, made it a much more valuable security than in 1875, leaving the trust estate to take all the risks of depreciation in the interim that the proximity of undersirable improvements might cause, and when the desirable character of the neighborhood had been assured, to compel the estate to take 6 per cent for a rent now unquestionably worth from 3 to 4 per. cent.   This Court has frequently said a party seeking specific performance must show·a case free of laches on his part, and has quoted with approval from *Milward* v. *Earl Thanct* as follows:  " A party cannot call upon a Court of equity for a specific performance, unless he has shown himself ready, desirous, prompt and eager."  *Penn* v. *McCullough*, 76 Md. 231–2.

These defenses against Henry Blake, if suing by independent bill, it is submitted, could not be avoided by the mere fact of his filing a petition in the *ex parte* proceedings, whereof the sole and only object was to show a compliance with a condition made necessary by the statute to a valid sale.

But an additional difficulty stands in the way of the petitioner's claim in this case, namely, that the privilege secured to Blake was a personal privilege, and cannot be enforced by any person other than himself.   It is not included in the lease and does not run with the land, and no suit could be brought against General Berry to compel him *in invitum* to buy out this rent.  The Stat. 32 H. 8, ch. 34, applies only to covenants contained in leases under seal by force of the words of the statute itself. *Alex. Brit. Stat.*, 337; *Poe's Pldg.* (3rd ed.), section 333.

And as Foley, trustee, could not compel Blake or his assignee to exercise the privilege or option of buying out the rent, so the assignee of Blake can not enforce the privilege granted to Blake against the trustee. *Andrews* v. *Meyerderick*, 87 Md. 518–20.   Mutuality is required for the specific enforcement of contracts in a Court of equity, and not even Blake's heirs could enforce this personal privilege. *Skinner* v. *Shepherd*, 130 Mass. 180.   It is mere license and not assignable.

Blake is dead, and the order of final ratification must, under the theory of the appellant, be considered to have abated by

his death since its passage, if treated as a decretal order. It ought accordingly be revived or proceeded with under the statute to make it executionable or enforceable, because of this change of parties. *Miller's Eq. Proc.*, sections 202 and 203. Being, however, purely *ex parte* and only for the purpose of showing the fulfillment of a statutory condition requisite to the execution of a power (if applicable to such a case), it is urged that it is no more enforceable *per se* than the approving order of the Orphans' Court would have been.

PAGE, J. delivered the opinion of the Court:

In May, 1875, the appellee, as trustee under the last will and testament of Emily McTavish, being seized and possessed of certain property, with power to make such changes of investment and reinvestmentment, as should seem to him advantageous and proper, filed a petition in the Circuit Court of Baltimore City, in which it was represented, that in the exercise of his power and his discretion to make changes of investment, he had sold to a certain Henry Blake the lessee of the property, the lot of ground which is the subject of this proceeding, with the annuity or ground rent issuing thereon of $325, *per annum* for the principal of the rent capitalized at six per cent, that is for the sum of $5,416.67, and that it was a fair price and the best that could be obtained, the lot being then vacant and unimproved.

It was further represented, that when the lot was leased to Blake, the petitioner had " agreed, in writing," that the lessee· " should have the privilege of buying out said rent, at any time within three years from the date of said lease," and that the sale reported to the Court " was made in pursuance of and in conformity to his said agreement." The petitioner also set forth that the approval of the Orphans' Court of Baltimore City had been given, as appeared by its order, a copy of which was filed with the petition; and thereupon prayed that the Court would confirm the sale thus reported, and direct an execution and delivery of a deed to Blake, " upon the receipt by the petitioner, of the purchase-money."

After an order *nisi*, and the usual publication thereof, on June 9, 1875, the Circuit Court passed its order finally ratifying and confirming the sale.

On May 19, 1875, twelve days after the passage of the order *nisi*, Blake agreed to sell, and did sell the property to the appellant Berry; and executed his bond of conveyance that day, wherein the agreement between the parties was stated in substance as follows: The appellant was to give for the property $25,000, of which $10,500, was paid in cash, $5,416.67 was to be paid on the 9th of June, 1875, " or as soon thereafter as a good deed in fee for the said property was made and delivered by said Blake to said Berry clear of all encumbrances;" and the residue thereof was payable at different periods thereafter.

In consideration thereof Blake was to " grant, or cause and procure to be granted to the appellant the said premises in fee-simple," clear of all incumbrances;" and further that until such deed was delivered or until default was made " in the payment of the said sum of $5,416.67, the appellant was to be permitted to hold the property, &c."

It may be observed in passing, that this agreement clearly shows, that both of the parties to it, contemplated that the appellant on complying with the obligations imposed upon him, should receive a title clear of the ground rent and of all other incumbrances; the sum of $5,416.67 therein referred to being the amount that Blake had agreed with Foley should be the purchase price of the ground rent, upon the payment of which he was to be entitled to a deed in fee.

The sale by the trustee, at the date of the bond of conveyance, had been reported to the Circuit Court, ratified *nisi*, and the time for the final ratification would expire on the 9th of June. If it were ratified on that day, as in fact it was, the appellant ran no risk in agreeing to make the payment on that day, or " as soon thereafter as a deed in fee was made and delivered," for, in that event, Blake would be in position to enable him to make the conveyance clear of the rent.

The object of the parties in deferring the payment of the

$5,416.67 until the time of the final ratification of the sale, it is clear, was to put Blake in that position so that the appellant should receive a deed, conveying the property in fee. For some reasons, of which we have not been informed, notwithstanding the sale was finally ratified, neither Blake nor Berry paid the purchase-money to the appellee. The appellant paid, however, all the residue of the purchase-money to Blake that the bond called for, and upon the day of the last payment, that is to say, on September 23, 1876, in fulfillment of the bond of conveyance, Blake conveyed the property to the appellant, subject, however, to the ground rent, this deed particularly states, that Blake has a right "to buy out and extinguish" the rent on the payment of the sum of $5,416.67, and conveys to Berry all Blake's interest, " and especially the right to obtain a deed of the property released from the ground rent, &c."

While, however, the appellee has not received this sum from either Blake or Berry, the appellant has paid and the appellee has received a sum equal to the annual interest thereon, that is to say, $325, in semi-annual installments, from the time of his purchase of the property down to the filing of the petition in this case. On the 3rd of June, 1899, or twenty-six years after the final ratification of the sale of the property by the trustee, Foley, the appellant filed a petition in the said Circuit Court, wherein, after setting out the facts substantially as stated here, he claimed the right to be substituted as purchaser of the said ground rent of $325 *per annum* in the place of Blake, and to be entitled, upon the payment of $5,416.67 and all arrearages of interest, to a deed in fee-simple of the lot of ground, and prayed that it may be so ordered.

In his answer thereto, the appellee admits Blake's right to redeem the ground rent, but charges that such right ought to have been exercised within three years of the date of the lease; that the sale to Blake was reported to and ratified by the Court, but that Blake subsequently "abandoned his intention of purchasing said rent and failed to comply with the terms of said agreement." He denies that the appellant has

become entitled as assignee to be substituted in his place as purchaser, and charges that the appellant, having full knowledge of Blake's right to purchase within three years, has paid the ground rent for twenty-four years, and never made any attempt to exercise the right of redemption. After testimony had been taken, the proceedings were submitted to the Court, who thereupon dismissed the petition, and from this decree the appellant has appealed.

There can be no question that the Court had jurisdiction to hear and determine the matter touching the confirmation of the sale under the provisions of the Acts of 1870, ch. 370, and of 1874, ch. 428. These provided that " no sale of real estate made by any trustee by virtue of any power or appointment contained in any deed or. will, shall be valid unless the same shall be confirmed by the Court as in the case of sales made by trustees appointed by the Court."

By virtue of these provisions, it was the duty of the trustee to report the contract of sale with Blake to the Court, which was invested with the same powers with respect to such sales, as it would have had if the sale had been made by a trustee appointed by the Court. When, therefore, the sale to Blake was finally ratified and confirmed, and the term had passed the order or decree became final and neither that Court nor any other had power to annul the same except by bill of review for error apparent on the face of the decree or by an original bill for fraud. *Tomlinson* v. *McKaig*, 5 Gill, 256.

It would seem to be clear that the order of final ratification having been passed by a Court having jurisdiction, that its effect was to invest the purchaser with the equitable ownership of the property, from the period of sale ; and to entitle him to a deed, on payment of the purchase-money. *Wagner* v. *Cohen*, 6 Gill, 97; *Sanders* v. *McDonald*, 63 Md. 508.

Furthermore, such an order, that is, an order of a Court of Chancery ratifying a sale made by its trustee, must be considered as amounting to a decree for the payment of the purchase-money, and in cases where no bond or evidence of indebtedness for the purchase-money is given, must be enforced by the

summary processes of the Court, under its clear right to enforce its own decrees. By the operation of the final order of ratification of the sale, Blake must be regarded as occupying the position of purchaser of the property, with a right to claim a deed on the payment of the purchase-money. *Richardson* v. *Jones*, 3 G. & J., 186; *Tomlinson* v. *McKaig*, 5 G. 256.

In his petition the appellee states that the sale made and reported was made "in pursuance of and in conformity to his written agreement;" that is, that the sale was made and reported to the Court in execution of the agreement contained in the lease. The agreement of the lease was, therefore, completed and fully executed upon the final ratification of the reported sale. The order of final ratification is to be considered as amounting to a decree ; *Richardson* v. *Jones*, (*supra*) and if so, it extinguished all rights the parties may have had respecting a sale of ground rent under the lease. Foley, by the sale and ratification, discharged his obligation to sell, and Blake had nothing left for him to do but to pay the purchase-money. Neither had any rights or obligations thereafter, except such as flowed from the new contract. Foley's duty was to collect the purchase-money, and to do this he held a vendor's lien and had open to him the summary processes of the Court; and Blake was to pay it to the trustee, with interest from the day of the sale. If Blake made default in the payment, Foley might have had a resale at the risk of Blake, and if the proceeds thereof should exceed the balance of purchase-money and all proper costs and expenses of resale, Blake would have been entitled to the excess. *Mealy* v. *Page, Executor*, 41 Md. 184.

It is clear that by the report of the sale by the trustee, the purchaser Blake was brought before the Court as a party, and became bound by all the subsequent proceedings. In *Stephens* v. *Magruder, Trustee*, 31 Md. 173, that principle was distinctly affirmed. It was contended in that case, that the Court had no power to compel payment by a purchaser by summary process when the sale had been reported by a trustee and confirmed by the Court, but that the proceedure should be by

original bill.   The Court in considering that question, said:
"Where is the necessity for an original bill? Are not the par-
ties already in Court? the trustee, the purchaser and those in-
terested in the proceeds of the sale?" See *Rohrer on Judicial
Sales*, p. 69. sec. 148; *Cazet* v. *Hubbell*, 36 N. Y. 680; *Requa*
v. *Rea*, 2 Paige, 339; *Deaderick* v. *Watkins*, 8 Humph., 520.

The effect of the sale to Blake, and the order finally ratify-
ing it was first, to execute the agreement to sell in three years
contained in the lease ; and secondly to complete an actual
sale, between the parties, whereby an equitable title to the es-
tate was vested in the purchaser Blake, who thereby became
entitled to the legal title on the payment of the purchase-
money, and thirdly, the obligation of Blake was changed from
the duty of paying·ground rent to that of the payment of pur-
chase-money with such interest thereon as might accrue if
such payment were deferred.

We do not think the doctrine of limitations or laches can be
made to apply.   Foley it seems had never demanded the pay-
ment of the purchase-money ; nor has either Blake or Berry
refused to pay it.   On the other hand, full interest has been
regulary paid semi-annually.   It is true, the parties referred to
the payment so made as " rent," and not interest, but the
amount so paid annually, was a sum equal to the six per cent
of the purchase price, and the exact sum that the yearly rent
amounted to, and the fact that it was called by one name or
another, can make no difference.   It was paid on account of
the obligation as it actually existed, whatever that was, and
there is no evidence that the parties by such payments, intended
to enter into a new contract to alter their respective positions,
or to change any of their existing legal rights.   During the
whole period which has elapsed since the order was passed,
there seems to have been no change in the relation of the
parties to each other.   By the sale the relation of debtor and
creditor was created between them and that relation is yet
unchanged, and all the consequences that flowed from such
a situation, still exist.   It was strenuously insisted that Blake
had no power to assign his rights of buying out the rent to

Berry.   As we have seen, the contract and sale, approved and ratified by the Court, was not a unilateral contract, but one that was binding upon both parties.   There were no facts assigned at the hearing or in the briefs of counsel, which tended to show how the substitution of Gen. Berry in the place of Blake could injuriously affect the appellee, and the Court and the trustee could only be "interested in the substitution" to the extent of having a responsible party, and one who would readily comply with the terms of sale put in the place of the original purchaser ; and it is not questioned that the character of Berry fully meets those requirements.   *Farmers Bank* v. *Clark, Admr.*, 28 Md. 156.

It follows from what has been said that the decree must be reversed.

*Decree reversed and cause remanded.*

(Decided January 16, 1901.)