## GEORGE C. AUKAM *vs.* OTWAY B. ZANTZINGER.*

*Appeal—Mortgage Sales—Exceptions—Place of Sale.*

A petition for a rehearing of a cause after an order passed therein is addressed to the discretion of the Court and no appeal lies from its action on such petition.

The purchaser at a mortgage sale of a tract of land containing about 186 acres having paid only a small part of the purchase-money and making default as to the balance, a resale was ordered at his risk. At the

---

*This cause, argued November 10th, 1903, was the first cause argued in the new building of the Court of Appeals in the city of Annapolis. The preceding case of *Deved* v. *Carrington*, argued October 22nd, 1903, was the last cause argued in the old chamber of the Court of Appeals in the State House.

resale, made according to due advertisement, the property was sold as a whole for about $1000 more than it brought at the first sale. The first purchaser filed exceptions to the ratification of the second sale, alleging that the price was inadequate, that the land should have been subdivided and sold in lots, in which case a larger sum would have been obtained, and that the exceptant made a mistake as to the day of sale and consequently was not present thereat so as to protect his interests. *Held,* that the evidence in this case does not establish the validity of any of these objections to the sale, and the order ratifying the same is accordingly affirmed.

The fact that the mortgage sale of a tract of land is made at the County Seat, about eight or ten miles distant from the property, instead of on the premises, is not a ground for setting aside the sales, in the absence of evidence to show any injury to mortgagor on that account.

Appeal from the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*D. W. Baker* and *Geo. P. Hoover* (with whom were *Jas. C. Rogers* and *Jos. C. Mattingly* on the brief ), for the appellant.

*F. Snowden Hill* (with whom was *Phil. W. Chew* on the brief ), for the appellee.

BOYD, J., delivered the opinion of the Court.

In *Aukam* v. *Zantzinger*, 94 Md. 421, we determined that the present appellant was entitled to be heard on the exceptions to a re-sale of the property involved filed by him, and an order refusing to vacate one ratifying the sale, after he had tendered his exceptions was reversed. After the cause was remanded, a large amount of testimony was taken and the Court below ratified the sale on the first day of December, 1902. A petition for a rehearing was refused on the 20th of the following month, and an appeal was then prayed from the order of ratification, as well as from the one overruling and dismissing the petition. The appeal from the last-mentioned order cannot be entertained, as it is well settled that the disposition of such an application for a re-hearing is in the discre-

tion of the Court to which it is addressed, and not subject to review.    *Zimmer* v. *Miller*, 64 Md. 296.    Nothing that was said in *Keifer's Heirs* v. *Reichart*, 93 Md. 97, can affect that well-established rule.    There an order granting a re-hearing of exceptions to a sale was passed before a decretal order setting aside the sale had been enrolled, but it was not filed, having been left with the counsel for the exceptants.    Several months afterwards the Court ordered that the petition and order of Court for a re-hearing be filed *nunc pro tunc*, and this Court dismissed the appeal on the ground that it was not such a final order as could be appealed from under the statute.    It was therefore not necessary to determine, and it was not determined, how far an order passed under the circumstances existing in that case could be reviewed by this Court, but we simply held that there was no provision in our statute authorizing an appeal from such an interlocutory order and its consideration could only be presented after the lower Court had "taken final action in the matter there pending."

There was also a motion to dismiss the appeal from the order of December 1st, 1902, ratifying the sale, but by reason of the conclusion we have reached on the merits of the controversy, it will not be necessary to make further reference to that motion or to exceptions to testimony filed in the case. The sale excepted to was made by Phil. H. Tuck, an attorney named in a mortgage from Frederick G. Aukam to German H. Hunt, of a property in Prince George's County, adjoining the District of Columbia, and including about 186 acres of land.    Default having occurred in the terms of the mortgage, the property was advertised for sale in the "Washington Star" and two County papers, to take place on the 24th of April, 1897.    The mortgagor had the sale postponed by paying $200 in cash, and promising to pay the balance of the arrears, costs, etc., within a specified time, which he failed to do.    The property was again advertised in those three papers and on June 18th, 1897, was sold to the appellant, who is a son of the mortgagor, at public auction for $5,951.    The terms of sale were one-third cash and the balance in one, two

and three years, or all cash at the option of the purchaser, with a cash deposit of $200 on the day of sale. The appellant paid the $200, the sale was reported to the Circuit Court for Prince George's County, and duly ratified by its order of 20th of September, 1897. The appellant having failed to further comply with the terms of sale, a petition was filed by Mr. Tuck asking the Court to compel him to pay the purchase-money with interest, and in default thereof that the property might be decreed to be sold at the risk of the purchaser. Accordingly an order was passed requiring him to bring into Court the balance of the one-third payment, with interest from the day of sale, or show cause to the contrary on or before the 15th of December, 1897. That order was served on the appellant and some time afterwards he arranged with Phil. W. Chew for a loan of five thousand dollars to be secured by a mortgage on the property and agreed to pay the amount necessary to reduce the indebtness to that sum. On July 6th, 1898, he did pay to Mr. Chew $500—$150.00 of which was for fees and commissions incident to said loan and the remainder was to be applied towards reducing the debt in excess of the five thousand dollars. He failed to pay the balance, and on April 26th, 1899, an order was passed for the resale of the property at the risk of the appellant. A sale was advertised to take place in front of the Court House at Upper Marlboro, on May 23rd, 1899. On the 20th of that month the appellant filed a bill in the Supreme Court of the District of Columbia to enjoin Phil. H. Tuck and German H. Hunt from making the sale, alleging that he had arranged on July 6th, 1898, with Mr. Chew, who it is charged in the bill was then the authorized attorney for Mr. Hunt, to pay him the $500 in cash, a portion of which was to be applied to the purchase-money due him, and the rest as a commission for negotiating the loan of five thousand dollars, that said loan was to take effect July 25th, 1898, and the balance of the purchase-money was to be paid on that date. It then alleged the payment of the $500 and that no loan was negotiated by Mr. Chew and nothing was done until the order of April 25th,

1899, was passed. Mr. Tuck was restrained from making the sale "until the further order of the Court to be made, if at all, on the 29th day of May, 1899." Messrs. Tuck and Hunt filed an answer in which amongst other things, they allege that Mr. Hunt had agreed to accept from the appellant a new mortgage for five thousand dollars, if he reduced the indebtedness to that amount, but that the appellant "has been unwilling or unable to reduce this indebtedness to five thousand dollars, as he has time and again promised to do." On the 29th of May, the counsel for the parties to that proceeding filed an agreement as follows: "It is agreed that the hearing of the application for preliminary injunction in this case shall be postponed until June 12th, 1899, and that if by that time the complainant shall not be prepared without further delay to carry out the agreement set forth in defendant Tuck's answer in this case as to a new loan of $5,000 and paying the difference, the injunction shall be refused and restraining order dissolved." On June 15th, 1899, the Court after referring to the failure of the complainant to comply with that agreement, passed an order dissolving the restraining order. The property was again advertised in the three papers, and on July 11th, 1899, was sold to the appellee for $6,925.00. Frederick G. Aukam, the mortgagor, excepted to that sale, testimony was taken and the case set for hearing on the 16th of November, 1900. On that day some question was raised about the right of the mortgagor to file exceptions, and this appellant then filed exceptions, but the next day they were withdrawn. Subsequently the Circuit Court for Prince George's County filed an opinion stating that Frederick G. Aukam had no standing in Court, and on February 21st, 1901, passed an order overruling the exceptions, but did not ratify the sale. Then on March 15th, 1901, the appellant renewed the exceptions and his right to do so was sustained by us in the case in 94 Md. 421. They allege that the sale was improperly made; that it was improperly advertised; that the price at which the property was sold was grossly inadequate; that the property would have sold much better in subdivisions

and it should have been subdivided and only enough sold to satisfy the mortgage; that it would have brought a much larger price per acre if sold in parcels, even if not actually subdivided, and then afterwards another exception was filed which stated that the appellant was honestly misled as to the day of sale and was therefore not present, although at the time he was in a position to protect his interest.

We have thus referred at length to the various proceedings which took place, because they seem to throw much light on the questions now before us.   The voluminous record in this case contains the opinions of many witnesses as to the value of the property, and as to how the place and method of offering it for sale affected the result.   It may be conceded that if we are to accept the opinions of the witnesses as to whether the property might have realized a larger price, if it had been offered in small tracts, the preponderance is in favor of the appellant, but it is apparent that much of the testimony on that subject is based on pure speculation.   It may be that if the property had been laid out in lots of from one to ten acres, there would have been more purchasers, but whether sufficient lots could have been thus sold in 1899 to meet the expenses of sale and the amount of the mortgage, is to say the least very doubtful.   There can be no doubt that property of this kind will ordinarily bring a better price at private sale than at a public auction.   As an illustration of this, Mr. F. G. Aukam testified that a Mr. Behrend would have advanced him ten thousand dollars on the property, and have taken an interest in what they realized over a certain sum, if it had not been advertised for sale, but this same party, on the day of sale now in question, bought the property for seven thousand dollars, but refused to take it when he found he would have to pay interest on the deferred payments, and it was then again offered and sold to the appellee for $6,925.   In the summer of 1898, fifty-seven acres of this farm within the District of Columbia sold at public auction for less than two thousand dollars, although the testimony shows that property within the District generally sold better than that beyond.   In 1901 that

same tract was sold at private sale for $3,500, although it is conceded that property in that neighborhood was then bringing better prices than it did in 1899. But without stopping to further discuss the value of the property, or the method of offering it, this sale was made by reason of the default of the appellant to comply with the terms of the sale made to him. He had purchased it at public auction for $5,951, and *it was then sold to him as an entirety just as it was to the appellee,* who agreed to pay nearly a thousand dollars more than the appellant had. We said in the case in 94 Md. that "It would seem to be clear from what we have said that F. G. Aukam had no interest in this property when it was resold, and he therefore had no standing to object to the sale. The fact that the appellant bought it to protect, or for the benefit of, his father, could make no difference, The purchaser accepted by the attorney making the sale was George C. Aukam and to him alone could he look for the purchase-money under this proceeding." We had previously quoted from *Miller's Equity Procedure*, 620, where the well-recognized doctrine in this State was stated that "The property is resold as the property of the defaulting purchaser, and at his risk. He is therefore entitled to any excess of the proceeds of sale at the resale, just as he would be responsible for any deficiency." It would therefore seem peculiar if the resale is to be set aside because it was sold in precisely the same way it was offered when the appellant purchased it, at least unless there be some definite and clear proof to show that conditions had so changed between the original and resale as to make it inequitable and improper to do so. But, as we have seen, after the property had been advertised for sale in the same way it was sold to the appellee, the appellant enjoined the attorney and mortgagee from making the sale and afterwards agreed in that case that if by June 12th, 1899, "the complainant shall not be prepared without further delay to carry out the agreement set forth in defendant Tuck's answer in this case as to a new loan of $5,000 and paying the difference the injunction shall be refused and restraining order dissolved," and, he having failed

to so carry out the agreement, the restraining order was accordingly dissolved. In *Hopper* v. *Hopper*, 79 Md. 400, one of the exceptions to a sale was based on the failure of the trustees to divide a portion of the property into building lots and this Court, after discussing that subject, said: "And, besides all this, the exceptant, who claims a large interest in the property, made no objection whatever to the mode or manner in which these tracts were offered at the first sale, and at which he was the purchaser. And although he was present, he made no objection; nor did he even request the trustees to offer the property in building lots. Having so large an interest, if he believed the property would sell better in lots, one might suppose that he might have at least advised or requested the trustees so to offer it." In this case the exceptant not only did not make such request of the attorney making the sale, but the agreement filed in the case in the District of Columbia negatives the idea of so selling the property, as the advertisement of the sale that was enjoined showed that it was offered as an entirety, and the sale now excepted to was made under a similar advertisement.

Another fact that should be averted to is that although the appellant endeavors to show by his witnesses that the property is worth much more than it brought, and that the price was grossly inadequate, he was unable to borrow such an amount on the property as would enable him to pay the balance of the purchase-money agreed to be paid by him, notwithstanding the fact that the second sale was not made for two years after he purchased the property. If under such circumstances it be determined that this sale must be set aside for the reasons relied on, few purchasers would be hereafter found at judicial sales. It is always to be regretted if owners of property sustain substantial injury by means of sales sanctioned by Courts of equity, and it is right that they be protected from the unjust, unreasonable or improper conduct of those making such sales, but those objecting must likewise stand on equitable, just and reasonable grounds when they seek to deprive purchasers of the rights they acquire when

they comply with the terms of sale. It is impossible to read this record without reaching the conclusion that the conduct of the mortgagee and the attorney were not only not oppressive and harsh, but they showed the appellant great indulgence. He not only let the interest and taxes accumulate, but he manifested very little concern for his own interest, in not securing the money to pay off this mortgage, if the property was worth anything like what he now seeks to show it was. After the experience Mr. Tuck had with the appellant, he certainly cannot complain that he demanded a deposit of one thousand dollars on the day of sale, but he claims to have had fifteen hundred dollars at that time, and hence he could not have been injured by the requirement to make such a deposit. We are of the opinion therefore that he cannot now complain of the manner in which the property was sold.

What we have said above also applies to the objection that the sale was made at Upper Marlboro instead of on the premises. The advertisement of the proposed sale that was enjoined showed that it was to be made there, but if that were not so, we would not be justified in setting aside a sale made at the county seat, which was only eight or ten miles from the property, without more evidence than we have to show that the appellant was thereby injured.

Nor do we think that the fact that the appellant made an error as to the day of sale entitles him to relief. The sale was advertised in the "Washington Star," and in two county papers, as well as by hand-bills, and it is not pretended that either Mr. Tuck, Mr. Hunt, or Mr. Chew was responsible for the mistake. It is singular that the appellant would wait until the last day if he was ready to comply with the terms of sale, or to pay off the mortgage, but if he thought proper to do so, or was so situated that he could not avoid it, he cannot hold the other parties responsible for the mistake of his father as to the date of sale. Ordinary prudence should have suggested to him the propriety of procuring a copy of the advertisement, if he expected to be at the sale, or at least ascertain with certainty the day of sale. A careful considera-

tion of all the exceptions has brought us to the conclusion that none of them can be sustained, and we must therefore affirm the decretal order of the Court below.

*Order affirmed, appellant to pay the costs.*

(Decided January 12th, 1904.)