## THE CONTINENTAL TRUST CO. ET AL.

### *vs.*

## THE BALTIMORE REFRIGERATING AND HEATING CO. ET AL.

*Trustee's sales: resale; at purchaser's risk.*

Where the trustee at a sale has accepted a purchaser and the sale has been approved and ratified, such purchaser becomes the equitable owner of the property.                    p. 456

If the contract of sale is not set aside, but the property is resold in a summary proceeding for the enforcement of the contract, the property is resold as the property of the first purchaser, and the sale is at his cost and risk.          p. 456

If the property sells for more than at the first sale, the original purchaser will be entitled to the surplus, after deducting the contract price, with interest and all costs and expenses.

p. 456

Where the property sells for less than at the first sale, the purchaser at the first sale is liable for the balance remaining unpaid.                                          p. 456

Whether in such a case the first purchaser bought for himself or for others can not be inquired into after the sale has been ratified.                                          p. 459

*Decided April 30th, 1913.*

Appeal from the Circuit Court No. 2 of Baltimore City (HARLAN C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Edward Duffy, Clarence K. Bowie* and *J. Southgate Lemmon,* for the appellants.

*W. H. DeCourcy Wright* and *George Whitelock,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

The question presented by this appeal is a narrow one, and in order to get a clear apprehension of it, it will be necessary to refer to the circumstances under which it arises.

In 1902 the Baltimore Refrigerating and Heating Company of Baltimore City executed to the Continental Trust Company, as trustee, a mortgage to secure an issue of two thousand bonds of the par value of $1,000.00 each. The Refrigerating Company became insolvent, and in 1908 receivers were appointed and authorized to continue the business of the company until the further order of the Court. After the appointment of receivers, two committees of the bondholders of the Refrigerating Company were formed, one called the Homer-Betts Committee, which represented a large majority of the bondholders, and the other called the Middendorf-Heyward Committee, representing a minority of the bonds. In December, 1909, some of the bondholders filed a bill against the Refrigerating Company and the Continental Trust Company alleging among other things that the Trust Company had wrongfully certified and issued a number of bonds of the Refrigerating Company, and asking that the Trust Company be removed as trustee for the bondholders. The Trust Company answered denying the averments of the bill, but the controversy resulted in the Trust Company being restrained, until the final hearing, from proceeding to foreclose the mortgage under the power contained therein. While that order was in force the Middendorf-Heyward Committee and Robert Spedden, a bondholder, on the 3rd of November, 1910, filed a bill against the Refrigerating Company, the Trust Company and the Homer-Betts Committee for a sale of the property of the Refrigerating

Company. A few days later, on the 12th of November, the same plaintiffs filed a petition for a sale of the property before final decree, and after a hearing the Circuit Court No. 2 of Baltimore City, on the 7th of December, 1910, passed an order or decree directing the sale of the property and appointing the Continental Trust Company trustee to make the sale. On February 3rd, 1911, the Trust Company, trustee, reported a sale of the property to the Central Securities Company for $503,000.00, which sale was finally ratified and confirmed by the Court. The Central Securities Company, as purchaser, paid the trustee $25,000.00 on account of the purchase money, but failed to pay the balance, and on March 27th, 1911, the Court ordered a re-sale of the property at the cost and risk of the purchaser. On appeal that order was affirmed by this Court on December 6th, 1911 (*Middendorf et al.* v. *Balto. Refrig. & Heating Co.,* 117 Md. 17). The property was accordingly resold by the trustee to Francis T. Homer and others, constituting a committee of the bondholders of the Refrigerating Company, for $261,000.00. That sale was finally ratified July 20, 1911, and the order confirming it was affirmed by this Court in February, 1912 (*Spedden et al.* v. *Balto. Refrig. & Heating Co.,* 117 Md. 443).

On the 19th of March, 1912, the Continental Trust Company, trustee, filed a petition in the Court below, in which, after reciting that the property had been sold to the Central Securities Company for $503,000.00; that said company had paid $25,000.00 but failed to make any further payment, and that the property had been resold at its cost and risk for $261,000.00, it alleged that the Central Securities Company was a corporation, organized under the laws of the State of Maryland, and that it acted in purchasing the property of the Refrigerating Company merely as the agent of other persons among whom were "holders or representatives of the bonds of the Baltimore Refrigerating and Heating Company; that no part of the difference" between the said

sum of $503,000.00 and the sum of $261,000.00 had been paid to the petitioner except the sum of $25,000.00; that the persons for whom the Central Securities Company acted were liable for said difference; that "a deficiency decree should be made against them," and "that none of the bond-holders represented by said Central Securities Company should be permitted to receive any part of the funds held by this trustee, as a dividend on any bond held by them." The petition further alleged:

"That while your petitioner has no reason to believe that any of the bonds of the Baltimore Refrigerating and Heating Company were improperly certified, issued or negotiated, nevertheless the plaintiffs in this case on or about July 21, 1911, filed a petition in these proceedings, in which petition they allege that certain of the six hundred bonds, numbered 701 to 1300, both inclusive, of the Baltimore Refrigerating and Heating Company, were improperly issued, and that no portion of the proceeds of sale of the property mentioned in these proceedings should be distributed to the holders of bonds numbered as aforesaid until this Court shall by proper proceedings have determined which, if any, of such bonds, have been improperly certified, issued and negotiated.

That before a distribution account can be passed in this case it is, therefore, necessary to determine:

(1) For whom and for which of the holders of the bonds of the Baltimore Refrigerating and Heating Company the aforesaid Central Securities Company was acting as agent.

(2) Which of the bonds of the Baltimore Refrigerating and Heating Company, numbered, respectively, 701 to 1300, both inclusive, were improperly certified, issued and negotiated.

Wherefore your petitioner prays that these proceedings may be set down for a hearing on the above questions, and that testimony may be taken orally in open Court."

No one was named as defendant in the petition, but the Court passed an order setting it down for a hearing on the 4th day of April, 1912, provided a copy of the petition and order be served on the two committees of the bondholders, the executors of Robert M. Spedden, the Central Securities Company, William R. Pohler, Julia M. Brauer, and William H. Brauer, or their respective counsel, on or before March 25th. Julia M. and William H. Brauer answered the petition alleging that they became possessed of the bonds held by them as the distributees of the estate of their father; that as holders of said bonds they had filed their claims in the case for the purpose of sharing in the distribution to be made under the direction of the Court; that they were in no way represented by the Central Securities Company; that they "concurred in the objects sought by the petition", and submitted their rights to the determination of the Court. The Middendorf-Heyward Committee, the executors of Robert M. Spedden and the Central Securities Company, filed separate demurrers to the petition. Nothing further was done under said petition until the 15th of October, 1912, when the Middendorf-Heyward Committee filed an "additional demurrer". In the meantime, however, The Continental Trust Company, trustee, filed its report to the Court showing that the terms of the sale to Francis T. Homer and others had been complied with; that all exceptions to the sale and all appeals that could be taken had been finally disposed of, and alleging that there was no reason why a distribution among the creditors of the Refrigerating Company should be further postponed. Upon this report the Court passed an order referring the case to the auditors to state an expense account and an account making final distribution of the funds in the hands of the trustee, and account B of the auditor, distributing the balance of the fund, after deducting costs, fees, etc., among the bondholders was finally ratified August 19th, 1912.

The fourth and fifth grounds of the "additional demurrer" filed by the Middendorf-Heyward Committee are as follows:

"4th. The petition is founded upon the alleged necessity of certain action by the Court prior to the distribution of the funds derived from the sale by the trustee of the property mentioned in the petition, and it appears from the proceedings in the cause had since the filing of the petition that the funds have been distributed by an auditor's account finally ratified by this Court on August 19th, 1912, and the Court has, therefore, no longer any jurisdiction or control over said funds.

5th. The petition shows on its face that the property referred to was sold by the trustee to the Central Securities Company and upon its sole credit, and that the sale to it was finally ratified by this Court; and the order of final ratification thereof is unreversed and remains in full force and effect, and consequently no other person can now be substituted by the Court as purchaser of said property in lieu of the Central Securities Company or held liable by decree of this Court for the default of said company in payment of the purchase money of said property."

After a hearing, the Court below, by its order of November 18th, 1912, sustained the demurrers and dismissed the petition. Thereupon the Continental Trust Company, trustee, on the 17th of December, 1912, filed a petition for leave to file an amended petition so "as to eliminate the matter of distribution suggested in the demurrer and to present the question of substance", and in the petition filed as the proposed "amended petition" the relief sought was "a deficiency decree against the principals for whom the Central Securities Company acted." The Court below, on the same day, refused to grant leave to the trustee to file the amended petition, and dismissed its petition of that date, and in its order stated that the demurrers had been sustained on the ground that the sale to the Central Securities Company

having been ratified, and the property resold at its risk, it was too late to institute an inquiry at the instance of the trustee as to whether any other persons than the company had purchased the property, and that the proposed amendment did not remove the ground of objection. From these orders of November 18th, and December 17th, the trustee and the Terminal Freezing and Heating Company have appealed.

Distribution of the proceeds of the sale of all the property of the Baltimore Refrigerating and Heating Company, after deducting costs, fees, etc., having been made among the bondholders of the company, and the account having been finally ratified without objection, the only important question in this case relates to the right of the trustee, under the circumstances stated above, to hold any other person or persons liable as purchasers for the sum the Central Securities Company agreed to pay for the property, and we think that question was correctly determined by the learned Court below.

The trustee having accepted the Central Securities Company as the purchaser of the property, and having reported the sale as made to said company, and the sale having been ratified by the Court, the Central Securities Company thereby became the equitable owner of the property. The contract of sale was not set aside, but the re-sale of the property was a summary proceeding for the enforcement of that contract, and the property was re-sold as the property of the purchaser and at its cost and risk. If at the second sale the property had sold for more than the Central Securities Company contracted to pay for it, it would have been entitled to the surplus, after deducting the contract price and interest, and all proper costs, expenses, commissions, etc. The property having sold for less than the amount of the original sale, the Securities Company is liable for the balance remaining unpaid. This is the rule stated in *Mealey* v. *Page,* 41 Md. 172, and followed in the more recent cases.

In the case of *Schaefer* v. *O'Brien,* 49 Md. 253, the lower
Court, after the sale had been reported, on the appli-
cation of the trustee and without notice to the purchaser,
ordered a re-sale of the property at his risk, and this Court
held that as the sale had been reported by the trustee, no
order affecting the rights of the purchaser should have been
passed without affording him an opportunity to be heard,
and that there could be no re-sale of the property at the
risk of the purchaser until the first sale was ratified.   In
that case JUDGE ALVEY said: "The party must be accepted
as the purchaser and the sale ratified, before he can be pro-
ceeded against for the enforcement of the contract of pur-
chase.   The summary proceeding against a defaulting pur-
chaser to obtain an order of re-sale at his risk, is grounded
upon the equitable lien held and controlled by the Court as
vendor of the property, for the benefit of those interested
in the proceeds of sale.   Such lien is but the incident of the
sale, and does not come into existence, to form the ground
of proceeding, until the contract of purchase is consum-
mated."   In the case of *Berry* v. *Foley,* 92 Md. 311, it was
said by JUDGE PAGE: "It would seem to be clear that the
order of final ratification having been passed by a Court
having jurisdiction, that its effect was to invest the pur-
chaser with the equitable ownership of the property from
the period of sale; and to entitle him to a deed, on payment
of the purchase money."   In *Mealey's case,* where the prop-
erty brought more at the second sale than it sold for at
the first sale, and the original purchaser's claim to the sur-
plus was resisted, JUDGE ALVEY said: "It is even contended
that the appellant never, in fact, intended to pay for the
property, and that his conduct in regard to the sale was in
truth but a fraudulent device whereby to enable him to
speculate on the chances of re-sale.   But, be this as it may,
it cannot affect the present claim of the appellant.   The
ground alleged against the appellant's claim may have formed
very sufficient reasons for rejecting or refusing to ratify

the sale made to him; but as that sale was allowed to be finally ratified by the Court, the appellant is entitled to occupy the position of a purchaser of the property. Trustees and executors can easily, and should, protect themselves, and the estates they represent, from such impositions and practices as the appellee charges here, by observing with strictness the powers under which they act. They can, and should, in all cases where there are doubts of the good faith, or solvency of the purchaser, require security for the compliance with the terms of sale, and that before the sale is ratified. By observing this precaution all danger of imposition, such as is here complained of, is at once effectually avoided." And in *Schaefer's case,* this Court said: "If, however, a sale be reported, as was done in this case, and the purchaser refuse to comply with the terms of sale, upon representation by the trustee, or other party in interest, the Court may order that cause be shown why the terms of sale are not complied with; and upon the failure of the party reported as the purchaser to show sufficient cause for his refusal or failure to comply, the Court may then, considering all the circumstances of the case, if there be no other sufficient cause to the contrary, either ratify the sale or set it aside, as will best subserve the interest of the parties concerned. In such case, if the sale be set aside, the Court may properly, as terms of releasing the party from the purchase, and as the consequence of his own act, impose upon him all the costs and expenses attending the sale thus set aside because of his default. But if the sale be ratified, and the party still fail to comply, the Court may then proceed in a summary way, by order *nisi* and final order, to direct a re-sale of the property at the risk of the purchaser."

In the case at bar the trustee accepted the Central Securities Company as the purchaser of the property, and that company, in compliance with the terms of sale, paid the trustee $25,000.00, which was no doubt deemed a sufficient protection for the persons interested from the consequences of

a failure to further comply with the terms of sale. The sale was reported to and finally ratified by the Court, and the subsequent proceedings for the resale of the property were based upon the theory that the contract of sale had been consummated by the order of Court and that the property belonged to said company. Whether that company purchased the property for itself or for other persons, is a matter not now open for inquiry in this case. The company was accepted as the purchaser, and in any proceeding for the enforcement of that contract of sale it alone can be held responsible as the purchaser. This we think was directly decided in the case of *Aukam* v. *Zantzinger*, 94 Md. 421, where the property of F. G. Aukam, the mortgagor, was sold under the mortgage, and the purchaser, his son, having failed to comply with the terms of sale, it was resold at his risk and the mortgagor filed objections to the ratification of the second sale. In that case the chief judge of this Court said: "It would seem to be clear from what we have said that F. G. Aukam had no interest in this property when it was resold, and he therefore had no standing to object to the sale. The fact that the appellant bought it to protect, or for the benefit of, his father, could make no difference. The purchaser accepted by the attorney making the sale was George C. Aukam and to him alone could he look for the purchase money, under this proceeding. Whatever arrangement he and his father made was merely between them and could in no way affect the right of the attorney making the sale to hold him responsible for the purchase money, and he alone is liable for any deficiency and entitled to any surplus that there may be as the result of the resale. The Court had no power to set aside the sale at the instance of F. G. Aukam, as it rightly determined." *Aukam* v. *Zantzinger*, 98 Md. 380.

The first three demurrers did not state the grounds of the demurrers, and it is urged on behalf of the appellants that the order of the Court below, of November 18th, 1912, should

to that extent be reversed. Section 158 of Article 16 of the Code of 1912 (Rule 18), in the form there provided, does require the special grounds of a demurrer to be stated. But there were no exceptions to the demurrers referred to in the Court below, and as the "additional demurrer" filed by the Middendorf-Heyward Committee, October 15th, 1912, does state the grounds of the demurrer, and as that demurrer challenges the right of the petitioner to the relief prayed, we will not, because of the defect indicated in the other or original demurrers, reverse the order of November 18th, 1912, which, for the reasons we have stated, must be affirmed.

The appellees have filed a motion to dismiss the appeal from the order of December 17th, 1912, refusing the petitioner's prayer for leave to amend and dismissing its petition of that date. That petition was addressed to the discretion of the Court, and, according to the settled rule, its action can not be reviewed on appeal. *Calvert* v. *Carter,* 18 Md. 73; *Snook* v. *Munday,* 96 Md. 514. We might add, however, that as the proposed amendment did not remove the objection relied on in the demurrer, and upon which the Court below based its decision, it very properly refused to permit the amendment to be made.

> *Order of November 18th, 1912, affirmed with costs, and the appeal from the order of December 17th, 1912, dismissed with costs.*