## THE P. DOUGHERTY COMPANY OF BALTIMORE COUNTY vs. CHARLES GRING.

*Contracts—Agreement as to payment of Costs of Suit by One Party for Benefit of Himself and Another—Dismissal of Suit—Assumpsit—Voluntary Payment.*

Where the special agreement between the parties has not been performed there can be no recovery on the common counts in *assumpsit*.

A voluntary and unauthorized payment by one person, of a debt due to a third party by another, does not entitle the person making the payment to maintain an action for the sum so paid against the debtor.

Where the agreement between the plaintiff and defendant was that the former should bring a suit to test the legality of a claim, in the decision of which the defendant was interested, and defendant agreed to pay one-half of the expenses thereof, and plaintiff brought such suit, but afterwards dismissed the same without the consent of the defendant before the final decision was reached, then plaintiff is not entitled to recover a share of the costs from defendant.

Plaintiff and defendant were both engaged in towing or in shipping merchandise on a canal. The legality of certain charges made by the Canal Company was disputed. Plaintiff agreed to bring suit against the company to test the question, and defendant agreed to pay plaintiff one-half of the costs and expenses of the suit, and also to pay what plaintiff might be compelled to pay to the company for the towing of his barges by the defendant. Plaintiff filed a bill under which the Canal Company was restrained from collecting a certain towing tax. Part of this sum was afterwards paid to defendant and an agreement that if plaintiff was compelled to pay it to the company, defendant would refund the same. The injunction was afterwards dissolved and an appeal taken, which plaintiff dismissed before trial. Plaintiff then paid the disputed tax to the Canal Company and sued defendant to recover the part thereof previously paid to him, and also one-half of the expenses of the litigation. *Held,*

1st. That a prayer instructing the jury that the plaintiff was entitled to recover the amount of the tax paid to the defendant if plaintiff *had* paid the same to the company is erroneous, since under the agreement defendant was not liable unless plaintiff had been *obliged* to pay the same.

2nd. That plaintiff is not entitled to recover from defendant one-half of the sum actually paid by him for costs of the litigation, but only the excess over one-half of the whole amount of the costs incurred, and paid by plaintiff.

3rd. That if the jury find that the contract between the parties contemplated that the suit against the Canal Company should include a claim by defendant for discriminating tolls on cargoes transported by him, and that plaintiff directed his attorneys not to include that claim in the suit, then plaintiff is not entitled to recover upon defendant's agreement to pay one-half of the costs of the suit, unless the defendant subsequently acquiesced in such omission of his claim from the suit.

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., STUMP and MARTIN, JJ.) At the trial the plaintiff's first prayer was, that if the jury found that the defendant was the owner of the tug W. S. Cahill and had been tow-

ing barges through the Albemarle and Chesapeake Canal, and that the said Canal Company had been charging him a towing privilege of twenty dollars for each barge towed by him through said canal in addition to the regular tolls on cargoes.

And if they find, that the plaintiff was the owner of certain barges which it used in its southern trade for carrying merchandise to and from North Carolina, through the waters of Maryland, Virginia and North Carolina.

And if the jury further find, that the defendant, in the early part of the year A. D. 1896, came to the plaintiff's office and solicited the towing of its barges through the said canal ; and contracted and agreed with the plaintiff to tow its barges through said canal at the rate of one hundred dollars for the Jackson barges, and one hundred and twenty-five dollars for the larger barges, and the defendant was to pay the twenty dollars towing privilege to said Canal Company.

And if the jury further find, that at the same time the defendant stated to the officers of the plaintiff's corporation that the charge for towing privilege by said Canal Company was an unjust discrimination against him, and requested that the plaintiff join him in restraining the payment of said towing privilege to said canal. And if the jury shall further find, that the plaintiff did then agree with the defendant to join him in resisting payment of said privilege in consideration of the promise on the part of the defendant (if they find such promise), to allow the plaintiff a reduction for one-half of said towing privilege from the contract price of said towing, if they find such contract and price.

And if the jury further find, that it was agreed between the plaintiff and defendant to resist the payment of said towing privilege; and if they further find, that the amount of said towing privilege was not paid by the defendant, but allowed to accumulate in amount, and become a charge against the said plaintiff. And if the jury further find, that the defendant requested that he be advanced one-half of

said towing privilege, and agreed with the plaintiff, that if the plaintiff had to pay the amount of said towing privilege to said Canal Compay, he would refund to the plaintiff whatever amount was advanced to and paid for him by the plaintiff to said Canal Company for said towing privilege.

And if the jury shall further find, that afterwards, to-wit, on or about the 23d day of June, A. D. 1897, the plaintiff did pay the full amount of such towing privilege to said Canal Company, then their verdict shall be for the plaintiff for whatever amount of money the plaintiff paid to the said Canal Company, on account of the defendant's tug "W. S. Cahill," for the privilege of towing his own and other barges not belonging to the plaintiff, through the said canal, and also one-half of the towing privilege paid to the Canal Company for the privilege of towing the plaintiff's barges through the said canal. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE and SCHMUCKER, JJ.

*Robert H. Smith* (with whom was *Wm. S. Evans* and *Arthur D. Foster* on the brief), for the appellant.

*Albert Constable* and *L. M. Haines*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This proceeding was commenced by an attachment, which was levied on property owned by the appellee, who is a non-resident. He appeared and gave bond whereby the attachment was dissolved, and thereafter the suit in the short note, or assumpsit case went to trial. The declaration contains a count on a special contract, and in addition, the usual common counts. The special contract declared on is in substance, that the defendant agreed, in consideration that the plaintiff would bring a suit against the Albemarle and Chesapeake Canal Company to test the legality of certain charges, that he, the defendant, would repay the plaintiff any money that the plaintiff might have to pay for any

charges made by the Canal Company for the privileges accorded the defendant's tug of towing barges through the canal ; and that the defendant would also pay to the plaintiff one-half of all Court costs, counsel fees and expenses that might be incurred by the plaintiff in connection with the suit.　All the questions arising on the record for review by this Court are presented by the prayers for instructions to the jury.　There are no special exceptions to the granting of the instructions actually given, and we must, therefore, assume that there was evidence legally sufficient to support their several hypotheses.　If there was no error committed in granting the instructions which were given, and none in refusing to grant those which were rejected, the judgment will necessarily be affirmed without reference to the verdict which the jury rendered.　With the weight of the evidence, and with the inquiry as to whether it established a particular contract or not, we have nothing whatever to do.　These were all questions for the jury to pass on.　A brief outline of the circumstances is necessary before proceeding to an examination of the granted and rejected prayers.

The P. Dougherty Company of Baltimore, the plaintiff below, and Charles Gring, the defendant, were both engaged in the towing and transportation business upon the Chesapeake Bay and adjacent waters.　They both owned barges and tugs and carried lumber from North Carolina through the Chesapeake and Albemarle Canal.　By reason of the draught of the Dougherty Company's tugs, they were not able to pass through the canal, and so the plaintiff company was obliged to depend on the owners of other tugs, having a less draught, to get its barges through the canal.　The plaintiff had been paying one Oscar Smith, as towing charges, one hundred and twenty-five dollars for large barges, and one hundred dollars for smaller ones.　At this time Gring was paying to the Canal Company, for what is called a towing privilege, a tax of twenty dollars per barge for each barge towed through the canal by his tug; and this

he claimed to be illegal. He was also paying to the Canal Company, as toll, forty cents per thousand feet of lumber transported in his barges. He claimed that this rate was higher than the Canal Company. charged against other barge-owners. Having these grievances against the Canal Company, he agreed with the Dougherty Company that he would tow their barges through the canal for the same prices the plaintiff was paying Smith, if the plaintiff would join him in legal proceedings against the Canal Company to test the legality of the twenty dollars towing-tax, and also to test the validity of the alleged rate-discrimination against him as a shipper. As a further consideration he agreed that if the towing-tax of twenty dollars should be declared by the Courts to be illegal, he would allow the Dougherty Company to participate in the results accomplished by the litigation by towing its barges thereafter at ten dollars less. According to Gring's testimony the suit was to be brought in the joint names of the P. Dougherty Company and himself, and this is borne out by a letter of the Dougherty Company of date May the twenty-fifth, 1896. A bill was finally filed on May the twenty-ninth, 1896, in the Circuit Court of the United States for the Fourth Circuit in the Eastern District of Virginia, by and in the name of the P. Dougherty Company as sole plaintiff against the Canal Company, to restrain the latter from collecting the towing-tax of twenty dollars. An injunction was issued on the same day. On February the eighth, 1897, this injunction was dissolved and the bill was dismissed. An appeal was taken to the United States Circuit Court of Appeals, but before the case was reached for argument, the Dougherty Company, on May the sixth, 1897, filed an order in writing dismissing the appeal. During the time the injunction, which prohibited the Canal Company from collecting this towage-tax upon Gring's tug, was in force, a considerable sum, representing the uncollected tax thereon, accumulated. This sum was retained by the Dougherty Company out of the money payable by it to Gring for the use of his tug in towing the

Dougherty Company's barges; and it was so retained to meet the contingency of the Dougherty Company being compelled to pay to the Canal Company this very tax, if the injunction procured by it, as above stated, should ultimately be dissolved. Subsequently, but before the dismissal of the suit in the United States Circuit Court of Appeals, the Dougherty Company paid over to Gring one-half of the sum so retained by it out of the money due by it to him, leaving still in its hands the other half.    After the dismissal of the suit the Dougherty Company paid to the Canal Company the whole amount of this towage tax, and it then brought this suit to recover from Gring, first, that portion of the tax paid by it in excess of the sum belonging to him, and withheld by it from him, as just stated; and secondly, one-half of the costs and counsel fees paid by the Dougherty Company in the prosecution of the injunction proceedings. These demands of the Dougherty Company are resisted by Gring, first, because, as he alleges, the contract between himself and the Dougherty Company being that the suit to be brought to test the validity of the towing charges and the legality of the' rate-discrimination, was to include both him and the Dougherty Company as *co-plaintiffs;* and as this agreement was, without his knowledge or consent, deliberately violated by the company, the Dougherty Company " got itself into the unfair position of being *dominus litis,*" and then subsequently grossly abused that position; and secondly, he insists that the suit was to embrace not only an attack on the validity of the towing-charges, but likewise on the alleged illegal rate-discrimination on cargoes; and that this stipulation was, without his knowledge or consent, also violated; and thirdly, he contends that the company, " in violation of the contract, having first placed itself in the position of *dominus litis*, afterwards, in fraud of the agreement, without his knowledge or consent, dismissed the suit " in the United States Circuit Court of Appeals, "thus frustrating the whole object and purpose of the litigation."

After the evidence on both sides was closed, the plaintiff

presented two, and the defendant four prayers for instructions to the jury. Both of those which the plaintiff offered were rejected, whilst the defendant's first, second and fourth were granted. These rulings are the only ones before us.

The plaintiff's *first* prayer, which is quite lengthy and will be set forth in the Reporter's Statement of the Case, was properly refused. After reciting hypothetically a number of facts, it alludes to an agreement between the plaintiff and defendant with respect to resisting the payment of the towing-charges, and then proceeds : " And if the jury further find that it was agreed between the plaintiff and defendant to resist the payment of said towing-privileges; and if they further find that the amount of said towing-privileges was not paid by the defendant; but allowed to accumulate in amount and become a charge against the said plaintiff. And if the jury further find that the defendant requested that he be advanced one-half of said towing privilege, and agreed with the plaintiff that if the plaintiff *had to pay* the amount of said towing privilege to said Canal Company, he would refund the plaintiff whatever amount was advanced to and paid for him by the plaintiff to said Canal Company for said towing privilege. And if the jury shall further find that afterwards * * * * * the plaintiff *did pay* the full amount of such towing privilege to said Canal Company, *then* their verdict must be for the plaintiff, &c." This prayer thus permitted a recovery without the slightest qualification, and even though the plaintiff had not complied with its agreement to resist the payment of the towing charges. It did more, it affixed an unconditional liability upon the defendant to pay the plaintiff a certain sum of money, without permitting the jury to find whether the plaintiff had fully performed its part of the agreement alluded to in the prayer; and whilst ignoring the contract declared on, based the right to a verdict upon the fact that the plaintiff *had* paid, and not that it *had to pay*, or was *obliged* to pay, money for the defendant. As stated in the *premises* of the prayer, the defendant's liability

depended on the plaintiff being *compelled* to pay certain money to the Canal Company; and yet, in the *conclusion*, a recovery was permitted if the jury should find simply that the plaintiff *had* paid, either by compulsion or voluntarily, for there was no exclusion of the latter method. The legal conclusion fixing the defendant's liability was, therefore, not contained in the premises from which it was attempted to be deduced, and was necessarily fallacious. If the prayer was designed to allow a recovery on the fourth count of the declaration—the count for money paid by the plaintiff for the defendant at his request—it was error to involve the terms of a special contract, as the prayer does, unless the prayer at the same time submitted to the jury to find that the plaintiff had performed its part of that contract, or was prevented by the act of the defendant from doing so. The *second* prayer of the plaintiff was also properly rejected. It has relation to the recovery of counsel fees and costs. Its hypothesis is that if the plaintiff and defendant contracted together to pay each one-half of all counsel fees and costs incurred in resisting the towage tax, and the plaintiff did resist the payment of this tax, and did pay counsel fees, and did incur costs and expenses in making such resistance, then the plaintiff was entitled to recover from Gring one-half of whatever amount the plaintiff did so pay in counsel fees and costs. Obviously, this conclusion does not follow, and is erroneous. If the total amount actually paid by the plaintiff for counsel fees and costs was less than half of the amount it contracted to pay, then, under the very contract set out in the prayer, the plaintiff could not recover from the defendant any portion of the sum so paid, because the plaintiff's express obligation required it to pay the one-half of all such fees and costs *incurred* in the litigation. In other words, before the Dougherty Company could recover from Gring any sum for counsel fees and costs, it must have paid more than the one-half of the whole amount incurred for those purposes; and the limit of its recovery would be,

not the one-half of the amount actually paid—for that might be less than one-fourth of the whole—but the sum in excess of the half which the plaintiff was bound to pay, and *did* pay.

The three instructions granted at the instance of Gring, the defendant, state three distinct propositions. The *first* has relation to the pleadings. Under the special count in the *narr.* a contract was declared on, by the terms of which the P. Dougherty Company was to be the sole plaintiff in the suit against the Canal Company, and the instruction told the jury that under the pleadings, to entitle the plaintiff to recover, it was bound to satisfy the jury, by preponderating evidence, that such a contract existed, unless the jury found that subsequently to the bringing of the suit, in the United States Court, in the name of the P. Dougherty Company *alone*, the defendant was informed that the suit had been so brought, and that he then ratified and sanctioned the omission of his name as co-plaintiff. There can be no possible objection to this prayer in so far as it points to the special count. There is no pretence that there was any evidence warranting a recovery under the first, second, third, fifth and sixth common counts, and they need not be considered in dealing with this instruction. Under the fourth count for money paid by the plaintiff for the defendant, at his request, there could be no recovery except either because of an implied contract, or because of a special contract performed on the part of the plaintiff, so far as the actual doing of the things to be done by it was concerned, and where nothing remained to be done but to pay the money. There can, in the nature of things, be no implied contract where there is an express contract. An implied contract arises by operation of law because of the absence of an express agreement. As both parties to this controversy insist that there *was* an express contract, differing, it is true, according to their variant contentions, there can be no recovery under the fourth count on the basis of an implied assumpsit. There can be no recovery under the fourth count on the

assumption that there was a special contract unless the contract was fully performed. *Walsh* v. *Jenvey*, 85 Md. 243. There is no pretence that the contract sued on was performed. Under these conditions the plaintiff could not abandon the agreement and sue on an implied assumpsit. In the case just cited the contract had, confessedly, been performed by the plaintiff, but the contest was over the *manner* of its performance. The work, it was conceded, had been done, but the question was whether it had been skillfully done. Here we have the naked non-performance to deal with.

The *second* instruction presents this proposition—that if there was an agreement between the plaintiff and the defendant that the former should bring a suit to test the legality of the towing charges, in the decision of which question the defendant was interested; that pursuant to such arrangement a suit was brought against the Canal Company, and that the plaintiff afterwards dismissed the suit without the consent of Gring, before a final decision was reached, then the plaintiff could not recover the money claimed. This is perfectly sound. The plaintiff could not recover if in violation of its contract it paid to the Canal Company money claimed to be due to the Canal Company from Gring whilst Gring disputed the legality of the claim." It is a settled rule that no person can, by a voluntary payment of the debt of another, without his authority, make himself a creditor of the person whose debt is thus paid." 1 *Poe Pl.*, sec. 107 (third ed.)

The remaining instruction involves a kindred proposition. It left to the jury to find whether the contract contemplated that the suit against the Canal Company should include a claim with respect to the illegal or discriminating tolls on cargoes of lumber transported by Gring over the canal, and if they should find that it did, then they were instructed that the plaintiff could not recover if it had directed its attorneys not to include that claim in that suit; unless the defendant Gring subsequently had knowledge of

that omission and, with such knowledge, ratified and confirmed it. This is nothing more than a familiar doctrine often applied. The plaintiff was not entitled to recover from the defendant money it had paid to another, when, by the terms of the contract between it and the defendant, it was not authorized to pay away any money for the defendant except upon the happening of a contingency which never came to pass. It is no answer to say that the inclusion of the claim with respect to the rate-discrimination in the proceeding relating to the towing-tax might or would have exposed the bill filed in the United States Court to a demurrer on the ground of multifariousness, because, if the contract between the parties contained a stipulation that *both* causes of complaint should be included, the Dougherty Company had no right to disregard that stipulation and still hold Gring liable. It was bound to perform the contract as made—this Gring could lawfully insist on—and if it undertook to do something different, something which was only a *part* of the thing stipulated to be done, it did so—it acted—upon its own responsibility and at its own risk.

As we have discovered no errors in the rulings which we have reviewed, the judgment appealed against, which was in favor of the defendant, Gring, will be affirmed.

> *Judgment affirmed, with costs above and below.*

(Decided June 21st, 1899).