JACOB MIZEN et al. *v.* HOWELL H. THOMAS.

[No. 74, October Term, 1928.]

314

*Decided January 17th, 1929.*

315

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Wm. Edgar Byrd* and *Randolph Barton, Jr.,* for the appellants.

*Clarence K. Bowie* and *G. Ridgely Sappington,* for the appellee.

Offutt, J., delivered the opinion of the Court.

On April 6th, 1925, Jacob Mizen and Esther Mizen, his wife, being indebted to Isaac C. Rosenthal in the sum of $23,000, to secure that debt executed to him a mortgage on certain property in Baltimore City. On August 31st, 1926, Rosenthal assigned the mortgage to the Baltimore Trust Company, which, on May 23rd, 1927, assigned it to Howell H. Thomas, the present holder, and the appellee in this case.

On May 26th, 1927, default having occurred under the covenants contained in the mortgage, the assignee filed a petition for its sale, presumably under a consent to a decree of foreclosure, although that fact does not appear in the record. But in that proceeding a decree was eventually passed authorizing a sale of the property and appointing G. Ridgely Sappington trustee to make it. The trustee in due course qualified and, on July 14th, 1927, reported to the court that he had, on July 6th, 1927, sold the property to the Laurel Development Company, of Baltimore City, for $11,600 to be "paid one-third in cash upon ratification of the sale by this court, balance in six and twelve months, or all cash at the option of the purchaser." The sale was finally ratified, but

the purchaser failed to comply with its terms, and on August 30th, 1927, the trustee filed a petition setting out the default, and praying that the purchaser be required to pay the purchase money, and "in default thereof that the said property may be decreed to be sold at the risk of" the purchaser. A show cause order granting the relief prayed was passed, and, no cause having been shown, on September 16th, 1927, it was made final, and the trustee thereupon sold the property to the Frederick Road Park Building Company for $6,100. That sale was also ratified, and an audit filed and ratified, showing a deficit of $5,805.87. Thereupon the trustee moved for a decree *in personam* against the Laurel Development Company for $5,670.83, the amount shown by the audit to be due from it, and at the same time the assignee moved for a decree *in personam* against the mortgagors for $5,805.87, the amount shown by the audit to be still due and unpaid on account of the mortgage, after crediting it with the net proceeds of the second sale. The petition against the Laurel Development Company does not appear to have been pressed, probably because it had no assets, and any further decree against it would have had no practical value. Jacob and Esther Mizen however answered the petition against them, and, after setting forth the facts to which we have referred, they said they were not interested in the resale or the deficiency resulting therefrom, but were entitled to be credited with the purchase price of the first sale, which was more than sufficient to satisfy the mortgage debt, interest, and costs, on the theory that, when the trustee allowed the sale to be ratified and stand, "said Laurel Development Company was thereby accepted not merely as the equitable owner thereafter of said property, but as the party solely entitled to any of the surplus should such resale have resulted in a surplus, and solely liable for any deficiency resulting from said resale, and that said trustee should be required to prosecute his claim against said Laurel Development Company for this reason." In connection with those issues evidence was offered which proved "that at the original sale the defendant, Jacob Mizen, was one of

the two bidders and bid for the property a sum within $100 of the price at which it was finally sold to the Laurel Development Company; * * * that the purchaser at the second sale, to wit, the Frederick Road Park Building Company, is a Maryland corporation, and that its stock is owned, one-third by Jacob Mizen, one-third by his counsel, Wm. Edgar Byrd, and one-third by his son-in-law, Reuben Kipnis, the same parties being officers and directors of the company" and that "at the second sale Mr. Mizen and Mr. Byrd stood together, Mr. Byrd bidding, and that when Mr. Byrd was asked in whose name the sale should be reported, he turned to Mr. Mizen and said 'We will report this in the name of the Frederick Road Park Building Co.,' and Mr. Mizen replied, 'Yes,' whereupon the trustee was so directed," * * * and also "that the Laurel Development Company had no assets, and that the only money which had ever been paid into its treasury was the money deposited on account of the first sale in this case, and that it had been incorporated in 1927."

The case was argued and submitted on the petition, the answers, and that evidence, and on June 5th, 1928, the court entered a deficiency decree in favor of Thomas for $5,805.87. From that decree this appeal was taken.

The only question presented by it is whether, where a trustee, appointed to make sale of mortgaged property to satisfy the debt secured by the mortgage, reports a sale of the property to a purchaser, and permits the sale to be finally ratified, and subsequently, upon the failure of the purchaser to comply with the terms of sale, asks permission to resell the property at the purchaser's risk, the mortgagors remain liable for any deficiency which may result after applying the net proceeds of the resale to the payment of the amount due under the mortgage, plus interest and costs.

Appellants' theory is that, when the trustee elected to stand by the sale to the Laurel Development Company, as he did in asking that it be resold at the purchaser's risk instead of asking that it be set aside, he substituted the purchaser's obligation for the mortgaged property, and thereafter held the property, not as security for the mortgage debt, but as

318

security for the purchaser's obligation, and that the mortgagors, having lost their property, were entitled to be credited with the proceeds of its sale.

Appellee, on the other hand, asserts that neither the ratification of the sale to an irresponsible and defaulting purchaser, nor the resale at the purchaser's risk, could affect the liability of the mortgagors for the payment of the mortgage debt, nor their liability for the payment of any deficiency resulting from the inadequacy of the mortgaged property to satisfy that debt.

If we disregard technicalities, and look only at the actualities, the case is rather a simple one. The trustee attempted to sell mortgaged property to a purchaser who happened to be wholly worthless and irresponsible, but the sale was never consummated because the purchaser failed to comply with its terms. The property was then resold at the purchaser's risk, but the proceeds of the resale were not sufficient to pay the mortgage debt. Prior to the resale the title to the property remained in the mortgagors, because it could not have been divested except by deed, and no deed was given, and after the resale a part of the mortgage debt still remained due and unsatisfied. The mortgagors had received full value for the debt, and the property pledged for its payment had, after a fair and public sale, failed to produce a fund sufficient to satisfy it. Under such circumstances, did the act of the trustee in asking for a resale, or the decree of the court ordering such resale, release the mortgagors from their obligation to pay such part of the debt as remained unsatisfied after the net proceeds of the resale had been applied to its payment.

It is settled in this state that, where property is conveyed by mortgage to secure the payment of a debt, that the debt is the principal incident of the transaction, and that the conveyance is no more than security for its payment, and accessory and appurtenant to it. *Timms v. Shannon,* 19 Md. 297; *Harris v. Hopper,* 50 Md. 357; *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421; *McCracken v. German Fire Insurance Co.,* 43 Md. 371. And this court, in the case of

*Washington Fire Insurance Co. v. Kelly, supra,* said : "Mortgages are now universally regarded, in courts of equity, as mere securities for the payment of money. The mortgagor is still the substantial owner of the property. He can sell, convey, devise or further encumber it, at pleasure, so long as the right of redemption exists. It may be taken for his debts under execution, and conveyances of it must be recorded under our registry laws. By the decisions of this court the respective interests of mortgagor and mortgagee have been frequently and clearly defined. In *Ford v. Philpot,* 5 H. & J. 315, 'the mortgagor,' say the court, 'is considered the substantial owner of the property mortgaged; the debt due is all the mortgagee, or those claiming under him, can demand; and although the legal estate is in the mortgagee, it is merely to secure the payment of the debt, and that effected the mortgagor must be restored to his original condition, the unfettered owner. The property mortgaged is substantially his, liable to the incumbrance of the debt; subject to that responsibility he can sell it to meet any other claims or demands, to whom he pleases.' And in *Evans v. Merriken,* 8 G. & J. 74, it is said, 'the mortgagee must be considered as having an estate or interest in the subject-matter of the mortgage, not absolute it is true, because such an estate is not imported by the terms of the mortgage deed, but an interest commensurate with the legal object contemplated to be attained by it, as a security for the payment of the debt due from the mortgagor to the mortgagee.' "

That view of the respective interests of the mortgagors and the mortgagees in mortgaged property and the debt thereby secured is also implicit in the statutes dealing with such interests. Baltimore City Charter, sec. 720 *et seq.*; Code, art. 66.

But if the debt is the principal, it cannot, except by agreement of the parties, be satisfied by a sale of the property mortgaged to secure its payment, unless such sale produces a fund sufficient to pay the mortgage debt, accrued interest, and costs. Baltimore City Charter, sec. 731A; Code, art. 66, sec. 24. And if a sale of the mortgaged property fails

to produce a fund sufficient to pay the mortgage debt, interest, and costs, the mortgagee may proceed as a common creditor against the mortgagor for the balance, or he may proceed against any additional security which he may hold for that purpose (*Andrews v. Scotton*, 2 Bl. Ch. 668, etc.; *Johnson v. Hines*, 61 Md. 138; *Jones on Mortgages*, sec. 1227), unless by his deed or acts *in pais* he is estopped from any further proceedings for the collection of the debt.

There is nothing in the record which indicates that the mortgagee, by any act or deed of his own, estopped himself from collecting the full amount of his mortgage debt and interest, unless it may be inferred (1) that the trustee, in allowing the sale to the Laurel Development Company to be ratified, acted as the agent of the mortgagee, and (2) thereby elected to accept the personal obligation of the purchaser as a complete satisfaction of the mortgage debt. But we know of no principle of law which would permit such an inference from the facts of this case. The foreclosure proceeded under the statute (Baltimore City Charter, sec. 720), and the bond which the trustee was required to give ran to the State, and was for the protection of all persons interested in the mortgaged property. Code, art. 66, sec. 7. He was appointed by the court, which was not bound to accept any nomination by the mortgagee, and he was answerable to the court for the faithful and complete discharge of the trust reposed in him. He was the officer of the court, and not the agent of any particular party to the cause, and his acts done in the execution of his trust are not to be regarded as the acts of the parties, for he is not their agent, but the agent of the court. He was appointed solely to perform a special limited duty, which was to sell the mortgaged property in the manner prescribed by the decree to the best advantage, and he had no concern in the satisfaction of the mortgage debt further than to see that the property pledged for its payment brought the best price obtainable. He had no authority either express or implied to bind the mortgagee by any agreement for the release or satisfaction of the mortgage debt, and so far as the proceeds of any sale of the mort-

gaged property which he might make would satisfy that debt, it would be treated as satisfied, but no further, irrespective of any act of his. In dealing with that general question, Chancellor Bland, in *Andrews v. Scotton, supra*, said: "On considering the nature of sales under the authority of the court of chancery, the first inquiry which suggests itself is, who are the real parties to the contract? This very idea of a contract implies that there is one party able and willing to contract, and another to be contracted with. It implies a perfect capacity and free will, in each of the parties to the agreement. To a contract of sale, made under a decree of this court, neither of the litigating parties can be considered as the vendor; although they, with others, such as creditors, who may be allowed to come in afterwards, may be very materially interested in the sale. The plaintiff cannot be considered as the vendor; because, oftener than otherwise, he has no title, always states his inability to sell, and prays the court to decree that a sale be made. The defendant cannot be the vendor; because he always positively refuses to part with his property, unless forced, or sanctioned in doing so by the power of the court. If then, neither of the litigating parties can be separately deemed to be the vendor, it is clear that they cannot both together, be so considered. But such sales are always made by an agent; in England, by a master, in this state, by a trustee. Private contracts may be made and executed in person, or by attorney; but the attorney is never considered as one of the contracting parties, he exercises no will or powers of his own, he is merely the medium or conduit through which the will of the contracting party is expressed. The master or trustee is the mere attorney of the court, acting under a specially delegated authority. 1785, ch. 72, sec. 7; April, 1787, ch. 30, sec. 5. And, in no case, is a master or trustee authorized to do more than to accept an offer or proposal to contract, which is of no sort of validity unless it be accepted, ratified and confirmed by the court. It is the court itself, for the benefit of all interested, therefore, who is the vendor in such cases. * * * Hence it is evi-

dent, that considered the bidder or purchaser as a contracting party, on the one side, dealing with the court as the contracting party on the other, and who was, in fact, the vendor. That the court was to be considered as the proprietor and principal, and the trustee as the mere agent, having no right or power whatever, other than as a mere attorney. Hence it is clear upon principle, and also upon authority, as well in this state, as in England, that the court of chancery, and not its trustees, is in all cases to be considered as the party contracting, or as the real vendor, *Gibson's Case,* 1 Bland, 138."

Returning to the question first stated, which is whether the act of the trustee in allowing the sale of the property to the Laurel Development Company to be ratified, and in reselling it at the purchaser's risk, substituted the obligation of the purchaser for the obligation of the mortgagors, it is apparent that the solution of it depends largely upon what is meant by a "sale." If the property was actually sold to the Laurel Development Company, and the trustee, with the knowledge and assent of the mortgagee, actually accepted the obligation of that company for the purchase money as a compliance with the terms of sale, then, since the purchase price was sufficient to satisfy the mortgage, there would be great force in the contention that thereafter the mortgagee would be required to look to the purchaser for the payment of the debt, and that the mortgagors would be relieved from liability thereon.

But that is not this case. It is true that, where in such a case as this the trustee reports a sale which in due course is finally ratified, the transaction is spoken of as a sale, and for many purposes it may be treated as a sale, and no mischief is occasioned by that use of the word. *Miller's Equity Proc.,* sec. 512. But strictly speaking it is not a sale, for a sale of real estate is not complete or consummate until the property has been actually conveyed, or at least until the purchaser has so far complied with the terms of sale as to entitle him to a conveyance. The bid of the purchaser, its acceptance, the report of the trustee, and its final ratification by the court, are

all successive steps in the formation and completion of a perfect and binding contract of sale, but do not amount in themselves to an actual sale. Nor can the property be treated as actually sold until the terms of sale have been met or waived, and the purchaser has received or is entitled to receive a conveyance thereof. For until then the title to the property is still in the mortgagor, and the only interest acquired by the purchaser is the right to receive a conveyance of the property upon complying with the terms of sale. *Marts v. Cumberland Ins. Co.,* 44 N. J. L. 481; *Stanton v. Henderson,* 1 Ind. 71; *Crolty v. Effler,* 60 W. Va. 258, 9 Ann. Cas. 772; *North Dak. Horse & Car Co. v. Serumgard,* 17 N. D. 466, 29 *L. R. A.* (N. S.) 518; *Words and Phrases,* 1st and 2nd series. We are not now dealing with the rights and risks of the purchaser arising under a complete but executory contract of sale, but with the question as to whether there has been an actual executed sale. Therefore such expressions as are found in *Brewer v. Herbert,* 30 Md. 301, and *Miller's Equity Proc.,* sec. 512, are not strictly applicable, and the statement in *Lannay v. Wilson,* 30 Md. 550, that "a purchaser under a decree in equity becomes the substantial owner of the property from the moment of final ratification of the sale, and he is entitled to and can recover the rents and profits of the estate. He is not only entitled to the possession of the property, but it remains at his risk, notwithstanding the legal title may not be conveyed," was necessarily limited to the facts of the case, and evidently was not intended to be of general application. For it would be singular indeed if a defaulting purchaser could oust the rightful owner from the possession of it, without either paying or securing the payment of the purchase price. And that view of the question seems to be consistent with the legislative policy of the state, in dealing with sales made in the foreclosure of mortgages under a power of sale, for Code, art. 66, sec. 11, provides: "All such sales, when confirmed by the court and the purchase money is paid, shall pass all the title which the mortgagor had in the said mortgaged premises at the time of the recording of the mortgage." And while no such provision appears in the statute

applicable to sales under a consent decree, we regard that statute as declaratory, and the principle stated as applicable to all decrees made under the direction of a court of chancery.

And inasmuch as the purchaser failed to comply with the terms of sale, and since the property never was conveyed to him, it was never actually sold to him, and the rule that, where the mortgaged property is actualy sold, that the mortgagors are entitled to have the purchase price applied to the satisfaction of the mortgage debt, has no application.

It is conceded that, if the contract of sale had been set aside either before or after ratification, and the property resold after that, that the mortgagors would be liable for the payment of any deficiency. If that is so, then it is difficult to see why such liability was released and extinguished by the trustee's unsuccessful attempt to compel the purchaser to perform his contract. He failed in that effort, but it does not appear that the mortgagors were in any manner prejudiced by the failure. The theory that the mere ratification of the sale to an irresponsible purchaser, who was apparently neither able or willing to complete the sale, in itself operated to substitute that worthless obligation for the obligation of the mortgagors, lacks substance. It may be that the trustee should have had the sale set aside, in view of the fact that, as the purchaser was not able to comply with his contract to purchase in first place, it was unlikely that it would be able to pay any deficiency resulting from a resale, but the mortgagee had no control over the trustee's judgment in respect to that, and in taking the course he did he was not acting for the mortgagee alone, but for all parties interested in the mortgaged property and the debt secured thereby. The substantial rights of the parties were not affected by his procedure, because the first sale was never consummated. The property was sold at the purchaser's risk, but that did not mean that it was sold as its property, for it was not. It was sold as the property of the mortgagors, for notwithstanding the ratification of the sale to the purchaser, since it never complied with the terms of sale and the property was never conveyed to it, the title remained in the mortgagors.

And it was sold at the purchaser's risk, not because he owned the property, but because he had failed to perform his contract to buy and pay for it. For, as was said by the chancellor in *Dalrymple v. Taneyhill,* 4 Md. Ch. 174: "The argument pressed now is, that one of the circumstances, and that a very important one, which the Court of Appeals say is necessary to work the mutation from real to personal estate may be dispensed with; that the sale, and the confirmation of the sale by the court, are sufficient for the purpose, though the purchaser may have neglected to comply with the terms, either by paying the money or giving the bonds, though the appellate court have said, when the question was, what combination of circumstances shall change the nature of real and impress upon it the character of personal estate, that a compliance by the purchaser with the terms is necessary. If the purchaser does not comply with the terms of sale, the thing, which is the equivalent for the real estate sold, does not exist, and may never exist. The land would be gone, or its nature changed, and neither money, nor security for the money to be paid for it brought into existence.

"In this case, Hodgkin, the first purchaser, bid, and the property was struck off to him for $2,140. If the land was changed from real to personal estate by the ratification of this sale, into what was it changed? Why surely into the purchase money. But the purchase money has been neither paid nor secured to be paid, and, therefore, it would follow, if the argument pressed be sound, that the real estate would be gone, and the only equivalent for it would be the bid of an insolvent man, who, according to the petition of the trustee, asking for authority to resell the property, had not only refused to comply with the conditions of the sale, but was trifling with the court and baffling its authority. Surely it would be very unwise to adopt a principle from which such consequences must necessarily follow. If real estate is converted into personalty, and especially the real estate of minors, it should be into something tangible and substantial, and the mere bid of an irresponsible man, though that bid may have been accepted by the court, cannot be permitted

to have an effect. The Act of 1841, ch. 216, under which the proceeding for a resale was had, gives no countenance to the idea that a non-complying purchaser is regarded as the owner of the estate sold by a trustee. It authorizes a resale of the property at his risk, but not as his property, on the contrary, the order which the court is authorized to pass by this act, and the order which was in fact passed in this case is a revocation of the order of confirming the sale and destroys any inchoate title which the first purchaser may have acquired by the confirmation."

It is suggested that the mortgagors were injured because, by the ratification of the first sale and a resale at the purchaser's risk, they were deprived of the opportunity of redeeming the property which they would have had had that sale been set aside. There are several answers to that contention. One is that there is no evidence that they were ever able to redeem the property, and such inferences as may be drawn from the established facts indicate that they were not. They not only suffered the mortgage to be in default, but prior to the first sale they made no effort to redeem, and at the second sale they permitted the property to be sold for $5,805.87 less than the amount of the mortgage debt, interest and costs. Another is, that it may be assumed in the absence of evidence to the contrary that the act of the trustee in reselling the property at the purchaser's risk was done as much in the interest of the mortgagors as of the mortgagee, because they were as much concerned in the reduction of the debt as he was. And again, by their default, the mortgagors made it necessary for the mortgagee to invoke the aid of a court of equity to secure the payment of the mortgage debt through a sale of the mortgaged property, and they should not be heard to complain if the trustee appointed by the court to make such sale, acting in their interest as well as that of the mortgagee, in attempting to obtain the highest possible price for the property, deprived them of an opportunity to redeem it, when they never at any time asserted any intention or desire to redeem.

These conclusions are, we think, in entire harmony with the former decisions of this court, as well as with the weight of authority elsewhere. In *Jones on Mortgages,* sec. 1642, the general principle is thus stated: "A mortgagor cannot defend against a claim for a deficiency on the ground that the premises were at first sold for a sum sufficient to pay the mortgage debt; but the purchaser failing to complete the purchase, an order was granted directing a resale, whereupon there was a deficiency, unless it appear that payment could have been enforced against the first purchaser, that the mortgagor requested the mortgagee to enforce such payment, or that the mortgagee acted fraudulently in the matter." In *Werner v. Clark,* 108 Md. 627, the mortgage being in default, the assignee of the mortgage in default foreclosed it under a power contained in the mortgage, and reported a sale of a part of the mortgaged property to Miss Catherine Werner. The sale was finally ratified, but, the purchaser failing to comply with the terms of sale, the assignee filed a petition praying that it be set aside and the property resold at her risk. On that petition, after notice to her, the court did not formally set the sale aside, but did order a resale at her risk. The property was resold, and two of the mortgagors excepted to the sale, but on motion their exceptions were dismissed upon the apparent theory that they had no standing to except. The motion was granted and the case came to this court on appeal. The precise point presented by the appeal was thus stated in the opinion: "The appellee rests his case wholly upon the proposition that the effect of the ratification of the original sale, was to devest absolutely the title of the mortgagors, and to vest a complete equitable title in the defaulting purchaser, and that upon ratification alone, without more, 'the mortgaged real estate became personal property, and the mortgagor's rights and interests in the former were transferred to the fund arising from the ratified mortgage sale.' It has certainly never been expressly so decided in this state, and we do not think it could be so held consistently with our decisions involving this question." After a full and clear analysis of the de-

cisions, the court overruled that proposition, and reversed the order of the chancellor, on the ground that "any one interested in the property *when the original sale was made,* the purchaser not having fully complied with the terms of sale, still continued to be interested in the property, when resold by reason of default by the original purchaser."

Appellants contend that the case last cited is not in point, because it only decided that the mortgagors had a right to except to the ratification of a resale when the price realized was less than that accepted at the first sale, but it decided more than that. Because, in deciding that, it had first to decide that the mortgagors had an interest in the property. And since they would not have been entitled to any excess of the amount realized at the second sale over the amount offered at the first sale (*Aukam v. Zantzinger,* 94 Md. 421), their only interest must have been their liability to pay any deficiency in the mortgage debt resulting from the resale. For if the mortgagors were not entitled to share in any surplus realized from the resale over the amount needed to pay the mortgage debt, interest, and costs, what interest could they have had in it except their liability to pay any deficiency remaining after the application of the proceeds of such resale to such debt. The case of *Continental Trust Co. v. Balto. Refrigerating & Heating Co.,* 120 Md. 450, upon which they rely, turned upon an entirely different point. There the question was whether the property was sold to the purchaser reported by the trustee, or to other and different persons for whom he was said to have acted as agent in making the purchase. The court held that question not open in that proceeding. In deciding that question, however, it did quote with approval an expression in *Mealey v. Page,* 41 Md. 172, to the effect that property resold at the risk of a defaulting purchaser was sold as his property, but in *Werner v. Clark, supra,* in referring to that expression, it was said: "But the last clause of the sentence just quoted, which we have underlined, shows conclusively that the distinguished judge who wrote that opinion did not mean to be understood as saying that the defaulting purchaser was to be regarded

as the owner of the property, but that he meant that in any event the proceeds of the resale, after payment of costs and commissions properly allowable, was to be applied to the amount of the purchase money due on the former sale, without regard to whom such amount was due." And it must be assumed that when the expression was repeated in *Continental Trust Co. v. Baltimore Refrigerating & Heating Co., supra,* it was used in the light of the interpretation given it in *Werner v. Clark, supra.*

In our opinion therefore, under the circumstances of this case, the resale at the purchaser's risk did not affect the obligation of the mortgagors to pay the mortgage debt, and that they remained after the resale, as they were before, personally liable for the payment of any deficiency remaining after the application of the net proceeds of any completed sale of the property under a foreclosure of the mortgage. It follows that the decree of the trial court was properly entered and will be affirmed.

*Decree affirmed, with costs.*

URNER, J., concurs in the result.

DIGGES and PARKE, JJ., dissent.